Alexander N. Loftus (pro hac vice application pending)
LOFTUS & EISENBERG, LTD.
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
Telephone: (312) 899-6625
alex@loftusandeisenberg.com
Attorneys for Plaintiffs 5000 Taku Investors LLC,
Bunnell Taku Investors LLC, and FUD Neary LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| 5000 TAKU INVESTORS LLC, BUNNELL TAKU INVESTORS LLC, and FUD NEARY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZINNIA HEALTH LLC; ZH OPERATIONS LLC d/b/a LUNA HEALTH GROUP; URIS HALL LLC d/b/a ANCHORAGE RECOVERY CENTER; GOLDEN PEAK RECOVERY INC.; and CARDINAL RECOVERY LLC,<br><br>Defendants. | Case No. 3:26-cv-00322-HRH<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC (collectively, the "Landlords"), by and through their undersigned counsel, allege against Defendants Zinnia Health LLC, ZH Operations LLC d/b/a Luna Health Group, Uris Hall LLC d/b/a Anchorage Recovery Center, Golden Peak Recovery Inc., and Cardinal Recovery LLC as follows.

## NATURE OF THE ACTION

1. The Landlords own four commercial healthcare buildings on a single campus in Anchorage, Alaska. They are owed $1,298,032.23 in past-due rent, taxes, and charges, itemized to the tenant on May 15, 2026. Of that sum, $1,133,232.23 remains unpaid after crediting in full the single $164,800.00 payment received on June 29, 2026 from an entity that is not the tenant. Those arrears sit on top of $33,421,977.12 in contract rent still scheduled to come due across the balance of four fifteen-year leases. Beginning in March 2025, payments of rent on 5000 Taku Drive began arriving from a rotating series of entities affiliated with Luna Health Group. From May 2025 through the last payment on June 29, 2026, every payment that reached the Landlords on that Property came from one of them—Uris Hall LLC, then Golden Peak Recovery Inc., then Cardinal Recovery LLC, then Uris Hall LLC again. Not one of those payments came from Zinnia Health LLC, the tenant named on every one of the four leases. The other three Properties have produced no payment at all. In more than two years, Zinnia Health LLC has not paid a single dollar on a single one of these Properties. It appears nowhere in the Landlords' ledger as a payor.

2. Every dollar the Landlords ever received on the 5000 Taku Drive lease—$1,618,400.00 in total—came from someone other than the tenant. The payment confirmations were transmitted to the Landlords by the accounts-payable department of Luna Health Group, on Luna Health Group's own forms, and the confirmation of June 29, 2026 expressly identified the payment as "AK Rent." Luna Health Group's operating company, Uris Hall LLC, does business at the Anchorage campus as Anchorage Recovery Center and, on information and belief, occupies and operates the premises. On May 15,

2026, the Landlords' counsel served a written notice of default demanding immediate payment of $1,442,571.56 across five leases, of which $1,298,032.23 was owed on the four Anchorage Properties. The same notice demanded that the Luna organization sign and return the Assignment and Assumption of Lease and the Consent to Assignment and Assumption of Lease the Landlords had already circulated—the documents that would put the name of the entity actually operating and paying onto the paper it was operating and paying under. Twelve months of rent were then past due on 101 Bunnell Street, 4950 Taku Drive, and 102 Stewart Street, which have never generated one payment since the day the rent obligation began. The assignment documents were never signed and were never returned.

3. What the Landlords are left with is a structure built to have it both ways: a tenant of record that has never performed and holds nothing, and a set of Luna entities that took the buildings and the licensed operation that went with them, paid the rent when they chose to pay it, and refuse to put their names on the leases. When the Landlords pressed, the Luna side proposed on August 3, 2026 that pre-May 2026 back rent simply "be forgiven," narrowed the conversation to Alaska alone, and then broke off communication entirely on August 5, 2026. No counterparty has communicated with the Landlords since. Each of the four leases carries a self-executing five-day monetary default provision requiring no notice and affording no cure, a mandatory prevailing-party attorneys' fee provision, an irrevocable consent to the appointment of a receiver, and a clause permitting the Landlords to accelerate the entire remaining term. The Landlords bring this action to collect what is owed, to recover possession, and to hold accountable the entities that actually took the

benefit of these leases. The Landlords will separately move under Fed. R. Civ. P. 66 for the appointment of a receiver to preserve the Properties and the revenues generated at them while this action is pending.

## PARTIES

### Plaintiffs

4. Plaintiff 5000 Taku Investors LLC is a limited liability company organized under the laws of the State of Delaware. It owns in fee simple the real property and improvements commonly known as 5000 Taku Drive, Anchorage, Alaska 99508, legally described in Exhibit A to the 5000 Taku Lease as "Lots E1, E2, & E3, Tract E, WONDER PARK SUBDIVISION, according to the official plat thereof, filed under Plat Number P-217C, in the records of the Anchorage Recording District, Third Judicial District, State of Alaska," and bearing Anchorage parcel identification numbers 006-293-17-000, 006-293-18-000, and 006-293-19-000. It is the Landlord named in the Lease Agreement dated June 6, 2024 for that property (the "5000 Taku Lease"), and it holds the reversion in the leasehold estate created by that Lease. Its notice address under the 5000 Taku Lease is 2211 N. Elston Avenue, Suite 400, Chicago, Illinois 60614. Its real estate is managed by The W Companies, LLC.

5. Plaintiff Bunnell Taku Investors LLC is a limited liability company organized under the laws of the State of Delaware. It owns in fee simple the real property and improvements commonly known as 4950 Taku Drive, Anchorage, Alaska 99508, bearing Anchorage parcel identification number 006-292-20-000, and the real property and improvements commonly known as 101 Bunnell Street, Anchorage, Alaska 99508, bearing

Anchorage parcel identification number 006-292-39-000. It is the Landlord named in the Lease Agreement dated December 1, 2024 for 4950 Taku Drive (the "4950 Taku Lease") and the Landlord named in the Lease Agreement dated December 1, 2024 for 101 Bunnell Street (the "101 Bunnell Lease"), and it holds the reversion in the leasehold estate created by each. Exhibit A to each of those Leases identifies the Property by street address. Its notice address under both Leases is 2211 N. Elston Avenue, Suite 201, Chicago, Illinois 60614. Its real estate is managed by The W Companies, LLC.

6. Plaintiff FUD Neary LLC is a limited liability company organized under the laws of the State of Delaware. It owns in fee simple the real property and improvements commonly known as 102 Stewart Street, Anchorage, Alaska 99508, bearing Anchorage parcel identification number 006-292-19-000. It is the Landlord named in the Lease Agreement dated April 1, 2025 for that property (the "102 Stewart Lease"), and it holds the reversion in the leasehold estate created by that Lease. Exhibit A to the 102 Stewart Lease identifies the Property by street address. Its notice address under the 102 Stewart Lease is 1133 W. Van Buren St., Chicago, Illinois 60607. Its real estate is managed by The W Companies, LLC.

7. The 5000 Taku Lease, the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease are referred to collectively as the "Leases." The four properties are referred to collectively as the "Properties." All four Properties are located in Anchorage, Alaska, within this District.

**Defendants**

8. Defendant Zinnia Health LLC is a limited liability company organized under the laws of the State of Delaware and is the Tenant named in each of the four Leases. Its notice address under Section 16.01 of each Lease is 520 Newport Center, Suite 550, Newport Beach, California 92660, Attention: Adam Bhaijee. Each of the Leases was executed on behalf of Zinnia Health LLC by Taek-Geun Kwon, whose name the executed signature pages render in two ways, as pleaded in paragraph 49. Zinnia Health LLC transacts business in Alaska through its tenancy of the four Properties.

9. Defendant ZH Operations LLC is a limited liability company organized under the laws of the State of Delaware, doing business as Luna Health Group. On information and belief, ZH Operations LLC is the holding company above seven operating companies, including Uris Hall LLC d/b/a Anchorage Recovery Center in Alaska, Upson Hall LLC d/b/a Denver Recovery Center in Colorado, La Gomera LLC in California, Golden Peak Recovery Inc., Cardinal Recovery LLC, Tenerife LLC, and Lanzarote LLC. ZH Operations LLC shares the Newport Beach, California business address at which Zinnia Health LLC receives notice under the Leases. On information and belief, ZH Operations LLC acquired the assets and the operating business of Zinnia Health LLC, has operated the Properties through its subsidiaries, and has transacted business in Alaska since 2025.

10. Defendant Uris Hall LLC does business as Anchorage Recovery Center. It is a limited liability company organized under the laws of the State of Delaware. It registered to transact business in Alaska on July 15, 2024, as Alaska entity number 10277710, and its registration is in good standing. Its entity mailing address of record is 520 Newport Center

Drive, Suite 550, Newport Beach, California 92660, the same address at which Zinnia Health LLC receives notice under Section 16.01 of each of the four Leases. Its entity physical address of record is 5000 Taku Drive, Anchorage, Alaska, which is the 5000 Taku Property itself. Uris Hall LLC is the entity that has remitted rent to Plaintiff 5000 Taku Investors LLC on the 5000 Taku Lease on six separate occasions. Uris Hall LLC is not a party to any of the Leases.

11. Defendant Golden Peak Recovery Inc. is a corporation incorporated under the laws of the State of Colorado, Colorado entity number 20181179862, formed on February 28, 2018, and maintains its principal place of business at 295 Interlocken Boulevard, Suite 400, Broomfield, Colorado 80021. On information and belief, it is one of the seven operating companies held beneath ZH Operations LLC. Golden Peak Recovery Inc. remitted rent to Plaintiff 5000 Taku Investors LLC on the 5000 Taku Lease for July 2025, October 2025, and December 2025.

12. Defendant Cardinal Recovery LLC is, on information and belief, a limited liability company and one of the seven operating companies held beneath ZH Operations LLC. Cardinal Recovery LLC remitted rent to Plaintiff 5000 Taku Investors LLC on the 5000 Taku Lease for August 2025, September 2025, and November 2025.

13. ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC are referred to collectively as the "Luna Defendants." Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC are referred to collectively as the "Luna Operating Defendants."

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction—28 U.S.C. § 1332(a)(1)

14. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). This is a civil action between citizens of different States in which the matter in controversy as to each Plaintiff exceeds the sum or value of $75,000, exclusive of interest and costs.

15. A limited liability company is a citizen of every State of which any of its members is a citizen, traced through each intervening layer of ownership to natural persons and to corporations. The Landlords plead the membership of each Plaintiff from executed operating agreements and state in paragraphs 16 through 18 every State of which each Plaintiff is a citizen. The membership of each Defendant lies within that Defendant's own knowledge, and the Landlords plead the citizenship of each Defendant on information and belief.

16. Plaintiff 5000 Taku Investors LLC. Under the Amended and Restated Operating Agreement of 5000 Taku Investors LLC dated May 29, 2025, the members of 5000 Taku Investors LLC and their respective percentage interests are: Ruby Development Group LLC, an Illinois limited liability company, 68.00 percent; F Street Manager 3, LLC, a Wisconsin limited liability company, 24.00 percent; CDG Realty LLC, an Illinois limited liability company, 6.00 percent; and Grey Investments LLC – RE, an Illinois series limited liability company, 2.00 percent. Those four members hold all of the membership interests in 5000 Taku Investors LLC. Under Article IV, section 4.1 and Exhibit B of the Operating Agreement of Ruby Development Group LLC effective June 3, 2019, the members of Ruby Development Group LLC are Shai Wolkowicki, an individual, holding a 90.00 percent

membership interest, and Lauren Lampert, an individual, holding a 10.00 percent membership interest. Mr. Wolkowicki is domiciled in, and is a citizen of, the State of Illinois. Ms. Lampert is domiciled in, and is a citizen of, the State of Illinois. Ruby Development Group LLC is therefore a citizen of the State of Illinois. Under Article IV, section 4.1 and Exhibit B of the Operating Agreement of CDG Realty LLC effective April 19, 2023, the sole member of CDG Realty LLC is Casey D. Goldberg, an individual, holding a 100 percent membership interest. Mr. Goldberg is domiciled in, and is a citizen of, the State of Illinois. CDG Realty LLC is therefore a citizen of the State of Illinois. Under the Operating Agreement of Grey Investments LLC – RE dated as of its organization on February 16, 2023, the sole member of Grey Investments LLC – RE is Alexander Sharrin, an individual, holding a 100 percent membership interest. On information and belief, Mr. Sharrin is domiciled in, and is a citizen of, the State of Illinois. Grey Investments LLC – RE is therefore a citizen of the State of Illinois. The members of F Street Manager 3, LLC are Jeff Lurie, an individual, and Scott Lurie, an individual, who together hold all of the membership interests in it. Mr. Jeff Lurie and Mr. Scott Lurie are each domiciled in, and are each a citizen of, the State of Wisconsin. F Street Manager 3, LLC is therefore a citizen of the State of Wisconsin. Every member of 5000 Taku Investors LLC, at every layer of ownership, is a natural person. 5000 Taku Investors LLC is accordingly a citizen of the State of Illinois and of the State of Wisconsin, and of no other State. 5000 Taku Investors LLC is manager-managed, and its manager is Shai Wolkowicki. Mr. Wolkowicki is a member of Ruby Development Group LLC and is not a member of 5000 Taku Investors

LLC; his citizenship enters this trace through Ruby Development Group LLC and not through his office as manager.

17. Plaintiff Bunnell Taku Investors LLC. Under the Operating Agreement of Bunnell Taku Investors LLC dated September 18, 2024, the members of Bunnell Taku Investors LLC and their respective percentage interests are: Ruby Development Group LLC, an Illinois limited liability company, 51.12 percent; LBK Real Estate Investments LLC, a Delaware limited liability company, 40.00 percent; and CDG Realty LLC, an Illinois limited liability company, 8.88 percent. Those three members hold all of the membership interests in Bunnell Taku Investors LLC. Ruby Development Group LLC and CDG Realty LLC are each a citizen of the State of Illinois, for the reasons stated in paragraph 16. Under the Certification of Member of the Operating Agreement of LBK Real Estate Investments LLC executed May 24, 2024, the sole member of LBK Real Estate Investments LLC is Harrison Katzen, an individual, holding a 100 percent membership interest. Mr. Katzen is domiciled in, and is a citizen of, the State of Florida. LBK Real Estate Investments LLC is therefore a citizen of the State of Florida. Bunnell Taku Investors LLC is accordingly a citizen of the State of Illinois and of the State of Florida, and of no other State. Bunnell Taku Investors LLC is manager-managed, and its manager is Shai Wolkowicki, who is not a member of it.

18. Plaintiff FUD Neary LLC. Under the Operating Agreement of FUD Neary LLC dated March 25, 2025, the members of FUD Neary LLC and their respective percentage interests are: Ruby Development Group LLC, an Illinois limited liability company, 51.12 percent; LBK Real Estate Investments LLC, a Delaware limited liability company, 40.00

percent; and CDG Realty LLC, an Illinois limited liability company, 8.88 percent. Those three members hold all of the membership interests in FUD Neary LLC. Ruby Development Group LLC and CDG Realty LLC are each a citizen of the State of Illinois, and LBK Real Estate Investments LLC is a citizen of the State of Florida, for the reasons stated in paragraphs 16 and 17. FUD Neary LLC is accordingly a citizen of the State of Illinois and of the State of Florida, and of no other State. FUD Neary LLC is manager-managed, and its manager is Shai Wolkowicki, who is not a member of it.

19. Defendant Zinnia Health LLC is organized under the laws of the State of Delaware, and its citizenship is determined by the citizenship of its members rather than by its State of organization. Zinnia Health LLC is registered as a foreign limited liability company with the Florida Department of State, Division of Corporations, under registration number M21000012392. In the annual report Zinnia Health LLC filed with that Division on February 16, 2026, it identified two Authorized Persons, each designated with the title "Member": Adam Bhaijee and Taek-Geun Kwon. On information and belief, Adam Bhaijee and Taek-Geun Kwon are the only members of Zinnia Health LLC. The address Zinnia Health LLC reported for Mr. Kwon in that filing is a residential address in New York, New York, and on information and belief Mr. Kwon is domiciled in, and is a citizen of, the State of New York. Mr. Bhaijee is domiciled in, and is a citizen of, the State of California. Zinnia Health LLC is therefore a citizen of the State of California and of the State of New York, and of no other State. No member of Zinnia Health LLC, traced through every intervening layer of ownership to natural persons and to corporations, is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida.

20. Defendant ZH Operations LLC is a limited liability company organized under the laws of the State of Delaware, and its citizenship is that of its members. On information and belief, the equity of ZH Operations LLC is held approximately 59.90 percent by the group of investors referred to as TriEdge, which controls ZH Operations LLC, and approximately 40.10 percent by the group of investors referred to as Endor. On information and belief, no member of ZH Operations LLC, at any layer of ownership, is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida.

21. Defendant Uris Hall LLC is a limited liability company whose citizenship is determined by the citizenship of its members rather than by its State of organization. The register of officials maintained by the Alaska Division of Corporations, Business and Professional Licensing for Alaska entity number 10277710 lists one official of Uris Hall LLC, and only one: "ZH Operations, LLC," designated with the title "Member." On information and belief, ZH Operations LLC is the sole member of Uris Hall LLC, and Uris Hall LLC is therefore a citizen of every State of which ZH Operations LLC is a citizen and of no other State. On information and belief, every operating company in the ZH Operations family, including Upson Hall LLC, Tenerife LLC, La Gomera LLC, and Cardinal Recovery LLC, has the same membership as Uris Hall LLC, and ZH Operations LLC is the sole member of each. On information and belief, no member of Uris Hall LLC, traced through ZH Operations LLC and through every further intervening layer of ownership to natural persons and to corporations, is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida.

22. Defendant Golden Peak Recovery Inc. is a corporation, and a corporation is a citizen of the State in which it is incorporated and of the State in which it maintains its principal place of business. Golden Peak Recovery Inc. is incorporated under the laws of the State of Colorado, Colorado entity number 20181179862, formed on February 28, 2018, and maintains its principal place of business at 295 Interlocken Boulevard, Suite 400, Broomfield, Colorado 80021. Golden Peak Recovery Inc. is therefore a citizen of the State of Colorado. No Plaintiff is a citizen of the State of Colorado. None of Ruby Development Group LLC, F Street Manager 3, LLC, CDG Realty LLC, Grey Investments LLC – RE, or LBK Real Estate Investments LLC, and no natural person holding an interest in any of them, is a citizen of the State of Colorado.

23. Defendant Cardinal Recovery LLC is a limited liability company whose citizenship is determined by the citizenship of its members rather than by its State of organization. Cardinal Recovery LLC holds National Provider Identifier 1710632724 in the registry maintained by the Centers for Medicare & Medicaid Services, on which the authorized official is identified as Adam Bhaijee, Chief Financial Officer—the same individual Zinnia Health LLC identifies as one of its two members in its Florida annual report, as pleaded in paragraph 19. On information and belief, ZH Operations LLC is the sole member of Cardinal Recovery LLC, as it is of Uris Hall LLC. On information and belief, no member of Cardinal Recovery LLC, at any layer of ownership, is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida.

24. Complete diversity of citizenship exists. Plaintiff 5000 Taku Investors LLC is a citizen of the State of Illinois and of the State of Wisconsin. Plaintiffs Bunnell Taku

Investors LLC and FUD Neary LLC are each citizens of the State of Illinois and of the State of Florida. Defendant Zinnia Health LLC is a citizen of the State of California and of the State of New York. Defendant Golden Peak Recovery Inc. is a citizen of the State of Colorado. No Defendant is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida, and no Plaintiff is a citizen of the State of California, of the State of New York, or of the State of Colorado. No Plaintiff shares citizenship with any Defendant.

25. Every member of every Plaintiff, at every layer of ownership, is a natural person, and each is a citizen of the State of Illinois, of the State of Wisconsin, or of the State of Florida, as pleaded by name in paragraphs 16 through 18. The membership of each Defendant lies within that Defendant's own knowledge and will be established by the disclosure Federal Rule of Civil Procedure 7.1(a)(2) requires of it. The Landlords reserve the right to amend these allegations.

**Amount in Controversy**

26. The matter in controversy as to Plaintiff 5000 Taku Investors LLC exceeds $75,000, exclusive of interest and costs. As of May 13, 2026, the amount past due to 5000 Taku Investors LLC on the 5000 Taku Lease was $308,352.13, comprising $247,200.00 in Base Monthly Rental, $43,997.13 in taxes, and $17,155.00 in penalties and interest. Unpaid Base Monthly Rental on the 5000 Taku Lease is presently not less than $337,016.00, exclusive of taxes, late charges, default interest, and Costs, and the gross rent scheduled to become due over the remaining Initial Term of the 5000 Taku Lease as of August 1, 2026 is $15,821,285.32.

27. The matter in controversy as to Plaintiff Bunnell Taku Investors LLC exceeds $75,000, exclusive of interest and costs, on each of its two claims independently and on both together. As of May 13, 2026, the amount past due on the 4950 Taku Lease was $98,229.42 and the amount past due on the 101 Bunnell Lease was $638,791.29, for a combined $737,020.71. Unpaid Base Monthly Rental is presently not less than $111,775.00 on the 4950 Taku Lease and not less than $723,250.00 on the 101 Bunnell Lease, and the gross rent scheduled to become due over the remaining Initial Terms as of August 1, 2026 is $1,760,069.24 and $11,388,682.88 respectively.

28. The matter in controversy as to Plaintiff FUD Neary LLC exceeds $75,000, exclusive of interest and costs. As of May 13, 2026, the amount past due to FUD Neary LLC on the 102 Stewart Lease was $252,659.39, comprising $216,290.00 in Base Monthly Rental, $9,524.18 in taxes, and $26,845.21 in penalties and interest. Unpaid Base Monthly Rental on the 102 Stewart Lease is presently not less than $282,725.00, exclusive of taxes, late charges, default interest, and Costs, and the gross rent scheduled to become due over the remaining Initial Term of the 102 Stewart Lease as of August 1, 2026 is $4,451,939.68.

29. Each Plaintiff independently satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332(a). No Plaintiff relies on aggregation of its claims with the claims of any other Plaintiff.

**Supplemental Jurisdiction—28 U.S.C. § 1367**

30. To the extent any claim pleaded in this Complaint does not independently satisfy 28 U.S.C. § 1332(a), this Court has supplemental jurisdiction over that claim under 28 U.S.C. § 1367(a), because every claim pleaded here arises from the same four leases, the

same course of occupancy and nonpayment, and the same transfer of the Anchorage operating business, and therefore forms part of the same case or controversy under Article III. Consistent with 28 U.S.C. § 1367(b), each Defendant, including each Defendant joined as a transferee, is independently diverse from every Plaintiff as alleged in paragraphs 16 through 24.

**Personal Jurisdiction and the Contractual Consent to Federal Jurisdiction**

31. This Court has personal jurisdiction over each Defendant. All four Properties are located in Anchorage, Alaska, and each Defendant transacts business in Alaska, has occupied or used real property in Alaska, or has performed or failed to perform obligations owed in Alaska concerning Alaska real property. The Landlords plead each Defendant's contacts with Alaska separately below.

32. **Zinnia Health LLC.** Zinnia Health LLC is the Tenant named on each of the four Leases, each of which covers Alaska real property, and it holds the leasehold estate in four Anchorage buildings. It contracted with three Alaska landlords for a fifteen-year term as to each Property, undertook under Section 7.01(a) to pay Alaska real property taxes directly to the applicable taxing authority, and undertook to insure and maintain Alaska real property. It has performed and failed to perform those obligations in Alaska. Personal jurisdiction over Zinnia Health LLC rests independently on Section 17.19 of each Lease, as alleged below.

33. **ZH Operations LLC.** On information and belief, ZH Operations LLC d/b/a Luna Health Group acquired the assets and the operating business of Zinnia Health LLC, took the benefit of the four Alaska leasehold estates, and has operated the Anchorage

campus through its subsidiaries since 2025. Its accounts-payable department transmitted payment confirmations to the Landlords identifying the payments as Alaska rent, including the confirmation of June 29, 2026 itemizing "Uris Hall LLC - AK Rent (March + April)." It is named as a Tenant in the notice of default of May 15, 2026. It has transacted business in Alaska and has used Alaska real property continuously since 2025.

34. **Uris Hall LLC.** Uris Hall LLC registered to transact business in Alaska on July 15, 2024 as Alaska entity number 10277710, and its registration is in good standing. Its entity physical address of record is 5000 Taku Drive, Anchorage, Alaska, which is the 5000 Taku Property itself. It holds two active Alaska business licenses for licensed premises at 5000 Taku Drive, and it holds a federal provider identifier giving its practice location as 5000 Taku Drive. It has remitted rent to Plaintiff 5000 Taku Investors LLC on six separate occasions. It occupies and operates Alaska real property.

35. **Golden Peak Recovery Inc.** Golden Peak Recovery Inc. remitted rent to Plaintiff 5000 Taku Investors LLC on the 5000 Taku Lease for July 2025, October 2025, and December 2025. On information and belief, it is one of the seven operating companies held beneath ZH Operations LLC, it took the benefit of the possession, occupancy, and use of 5000 Taku Drive for each month for which it paid, and it participated with the other Luna Defendants in the occupancy and operation of the Anchorage campus. By paying rent under an Alaska lease of Alaska real property and by taking the benefit of that property, it purposefully availed itself of the privilege of conducting activities in Alaska, and the Landlords' claims against it arise directly out of those contacts.

36. **Cardinal Recovery LLC.** Cardinal Recovery LLC remitted rent to Plaintiff 5000 Taku Investors LLC on the 5000 Taku Lease for August 2025, September 2025, and November 2025. On information and belief, it is one of the seven operating companies held beneath ZH Operations LLC, it took the benefit of the possession, occupancy, and use of 5000 Taku Drive for each month for which it paid, and it participated with the other Luna Defendants in the occupancy and operation of the Anchorage campus. By paying rent under an Alaska lease of Alaska real property and by taking the benefit of that property, it purposefully availed itself of the privilege of conducting activities in Alaska, and the Landlords' claims against it arise directly out of those contacts.

37. Personal jurisdiction over Zinnia Health LLC rests independently on Section 17.19 of each of the four Leases, which provides in relevant part:

> "For purposes of any action or proceeding arising out of this Lease, the parties hereto expressly submit to the exclusive jurisdiction of all federal and state courts located in the state where the Property is located. Tenant consents that it may be served with any process or paper by registered mail or by personal service within or without the state where the Property is located in accordance with applicable Law. Furthermore, Tenant waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. Nothing contained in this Section shall limit or restrict the right of Landlord to commence any proceeding in the federal or state courts located in the states where the Property is located to the extent Landlord deems such proceeding necessary or advisable to exercise remedies available under this Lease."

38. Section 17.19 expressly names federal courts. It fixes exclusive jurisdiction in "all federal and state courts located in the state where the Property is located," and it separately reserves to the Landlord the right "to commence any proceeding in the federal

or state courts located in the states where the Property is located." Because all four Properties are located in Alaska, Section 17.19 designates this Court as one of the fora in which this action may be brought, and Zinnia Health LLC has waived any objection to personal jurisdiction, to the convenience of this forum, and to venue.

39. Section 17.19 of each Lease further provides that "[t]his Lease shall be governed by, and construed with, the laws of the state where the Property is located, without giving effect to any state's conflict of laws principles." Alaska law governs each of the four Leases.

**Venue—28 U.S.C. § 1391(b)(2)**

40. Venue lies in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District. All four Properties are located in Anchorage, Alaska. The 5000 Taku Drive property is legally described in Exhibit A to the 5000 Taku Lease as "Lots E1, E2, & E3, Tract E, WONDER PARK SUBDIVISION, according to the official plat thereof, filed under Plat Number P-217C, in the records of the Anchorage Recording District, Third Judicial District, State of Alaska," bearing Anchorage parcel identification numbers 006-293-17-000, 006-293-18-000, and 006-293-19-000. The remaining three Properties bear Anchorage parcel identification numbers 006-292-20-000 (4950 Taku Drive), 006-292-39-000 (101 Bunnell Street), and 006-292-19-000 (102 Stewart Street), as identified in the delinquent-tax table of Exhibit A to the Default Letter described in paragraphs 80 through 85 below. The leases were performed and breached in Anchorage, the occupancy at issue occurred in Anchorage, and the delinquent real property taxes were assessed in Anchorage.

41. Venue in this District rests independently on Section 17.19 of each Lease, by which the Tenant waived any objection that the action is brought in an inconvenient forum or that venue is improper.

## FACTUAL ALLEGATIONS

### A. The Four Anchorage Leases

42. The four Properties are used together as a single campus in Anchorage, Alaska. The campus is known as Anchorage Recovery Center, and Uris Hall LLC does business at it under that name. A construction budget memorandum dated July 31, 2026 and transmitted to the Landlords' representatives describes the four Properties collectively as the "Luna Health Group Anchorage Campus."

43. **The Landlords own the Properties, and the Tenant said so.** Each Landlord owns its Property in fee simple, as alleged in paragraphs 4 through 6, and each holds the reversion in the leasehold estate its Lease created. The Tenant acknowledged as much. Section 17.04(d) of each Lease provides: "Tenant acknowledges that fee simple title (both legal and equitable) is in Landlord and that Tenant has only the leasehold right of possession and use of the Property as provided herein." Section 17.04(a) of each Lease further records the parties' agreement, as a material inducement to Landlord entering into the Lease, that the Lease is a "true lease" and "is not a financing lease, capital lease, mortgage, equitable mortgage, deed of trust, trust agreement, security agreement or other financing or trust arrangement." No Defendant has ever disputed any Landlord's ownership of any Property.

44. **The 5000 Taku Lease.** On June 6, 2024, 5000 Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant, entered into a written Lease Agreement for 5000 Taku Drive, Anchorage, Alaska 99508. Section 2.02 fixes the Lease Commencement Date as June 7, 2024. The Initial Term is fifteen years, with two extension options of five years each under Sections 2.03 and 4.02, and a stated expiration date if fully extended of June 6, 2049 under Section 2.04. Section 2.05 sets the Initial Base Annual Rental at $960,000.00, which yields a Base Monthly Rental of $80,000.00. Section 2.06 provides for an annual Rental Adjustment of three percent of the Base Annual Rental then in effect, and Section 2.07 fixes the Adjustment Date as June 6 and every anniversary thereafter. Section 5.01 abates fifty percent of the Base Monthly Rental for the period beginning on the Commencement Date and ending on the date that is six months following the Commencement Date. Section 5.07 obligated the Landlord to fund a Tenant Improvement Allowance of $1,000,000.00. The current Base Monthly Rental is $84,872.00, following the Rental Adjustment that took effect on the June 6, 2026 Adjustment Date under Sections 2.06, 2.07, and 5.02. A true and correct copy of the 5000 Taku Lease is attached as **Exhibit A**.

45. **The 4950 Taku Lease.** On December 1, 2024, Bunnell Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant, entered into a written Lease Agreement for 4950 Taku Drive, Anchorage, Alaska 99508. Section 2.02 fixes the Lease Commencement Date as April 1, 2025. The Initial Term is fifteen years, with two extension options of five years each, and a stated expiration date if fully extended of March 31, 2050. Section 2.05 sets the Initial Base Annual Rental at $102,000.00, which yields a Base Monthly Rental of

$8,500.00. Section 2.06 provides for a three percent annual Rental Adjustment, and Section 2.07 fixes the Adjustment Date as April 1, 2026 and every anniversary thereafter. Section 5.07 obligated the Landlord to fund a Tenant Improvement Allowance of $400,000.00. The current Base Monthly Rental is $8,755.00. Section 5.01 abates fifty percent of the Base Monthly Rental for the period beginning on the Commencement Date and ending on the date that is six months following the Commencement Date, which on an April 1, 2025 Commencement Date is the period April 2025 through September 2025. The Landlords' arrears schedule, itemized in Exhibit A to the Default Letter, instead commences the Base Monthly Rental obligation on the 4950 Taku Lease on June 1, 2025 and applies the abated rate for the four months of June through September 2025. The Landlords plead that schedule, and the sums stated below are measured by it. No payment has ever been received on this Lease. The April 2025 and May 2025 installments are not charged in the schedule the Landlords plead, and the Landlords seek nothing on account of them in this action; the concession forgoes $8,500.00 in abated rent the Lease would permit the Landlords to charge. The Landlords reserve the balance of any abatement not taken. A true and correct copy of the 4950 Taku Lease is attached as **Exhibit B**.

46. **The 101 Bunnell Lease.** On December 1, 2024, Bunnell Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant, entered into a written Lease Agreement for 101 Bunnell Street, Anchorage, Alaska 99508. Section 2.02 fixes the Lease Commencement Date as April 1, 2025. The Initial Term is fifteen years, with two extension options of five years each, and a stated expiration date if fully extended of March 31, 2050. Section 2.05 sets the Initial Base Annual Rental at $660,000.00, which yields a Base

Monthly Rental of $55,000.00. Section 2.06 provides for a three percent annual Rental Adjustment, and Section 2.07 fixes the Adjustment Date as April 1, 2026 and every anniversary thereafter. Section 5.07 obligated the Landlord to fund a Tenant Improvement Allowance of $2,000,000.00. The current Base Monthly Rental is $56,650.00. Section 5.01 abates fifty percent of the Base Monthly Rental for the period beginning on the Commencement Date and ending on the date that is six months following the Commencement Date, which on an April 1, 2025 Commencement Date is the period April 2025 through September 2025. The Landlords' arrears schedule, itemized in Exhibit A to the Default Letter, instead commences the Base Monthly Rental obligation on the 101 Bunnell Lease on June 1, 2025 and applies the abated rate for the four months of June through September 2025. The Landlords plead that schedule, and the sums stated below are measured by it. No payment has ever been received on this Lease. The April 2025 and May 2025 installments are not charged in the schedule the Landlords plead, and the Landlords seek nothing on account of them in this action; the concession forgoes $55,000.00 in abated rent the Lease would permit the Landlords to charge. The Landlords reserve the balance of any abatement not taken. A true and correct copy of the 101 Bunnell Lease is attached as **Exhibit C**.

47. **The 102 Stewart Lease.** On April 1, 2025, FUD Neary LLC, as Landlord, and Zinnia Health LLC, as Tenant, entered into a written Lease Agreement for 102 Stewart Street, Anchorage, Alaska 99508. Section 2.02 fixes the Lease Commencement Date as April 1, 2025. The Initial Term is fifteen years, with two extension options of five years each, and a stated expiration date if fully extended of March 31, 2050. Section 2.05 sets

the Initial Base Annual Rental at $258,000.00, which yields a Base Monthly Rental of $21,500.00. Section 2.06 provides for a three percent annual Rental Adjustment, and Section 2.07 fixes the Adjustment Date as April 1, 2026 and every anniversary thereafter. Section 5.07 is intentionally omitted, and no Tenant Improvement Allowance was provided. The current Base Monthly Rental is $22,145.00. Section 5.01 abates fifty percent of the Base Monthly Rental for the period beginning on the Commencement Date and ending on the date that is six months following the Commencement Date, which on an April 1, 2025 Commencement Date is the period April 2025 through September 2025. The Landlords' arrears schedule, itemized in Exhibit A to the Default Letter, instead commences the Base Monthly Rental obligation on the 102 Stewart Lease on June 1, 2025 and applies the abated rate for the four months of June through September 2025. The Landlords plead that schedule, and the sums stated below are measured by it. No payment has ever been received on this Lease. The April 2025 and May 2025 installments are not charged in the schedule the Landlords plead, and the Landlords seek nothing on account of them in this action; the concession forgoes $21,500.00 in abated rent the Lease would permit the Landlords to charge. The Landlords reserve the balance of any abatement not taken. A true and correct copy of the 102 Stewart Lease is attached as **Exhibit D**.

48. The four Leases are the same instrument on the same form. Apart from the identity of the Landlord, the date, the address of the Property, the rent, the Tenant Improvement Allowance, the condemnation-election provision at Section 12.02(b)(ii), the wording of Section 15.02 as described in paragraph 63 below, and immaterial variations in

the numbering of the concluding miscellaneous sections and in non-operative text, the operative provisions of the four Leases are identical.

49. On information and belief, each of the four Leases was fully executed and delivered by the Landlord named in it and by Zinnia Health LLC as Tenant. Each Lease was signed on behalf of Zinnia Health LLC by Taek-Geun Kwon. The executed signature pages render his name in two ways: the 5000 Taku Lease renders it "Taek-Geun Kwon" and states his title as Member, and the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease render it "Take-Geun Kwon" and state his title as Chief Executive Officer. The Landlords allege on information and belief that both renderings identify the same individual, and that he is one of the two Authorized Persons Zinnia Health LLC designated as a Member in the annual report described in paragraph 19. The executed counterpart of each Lease, including the signature page bearing the signature of each party, is attached as part of Exhibits A through D.

## B. The Operative Lease Provisions

50. **Rent is absolute and net.** Section 5.04(a) of each Lease provides that "[t]he Base Annual Rental payable hereunder shall be net to Landlord, so that this Lease shall yield to Landlord the Rentals specified during the Lease Term, and all Costs and obligations of every kind and nature whatsoever relating to the Property . . . shall be performed and paid by Tenant," and that "[a]ll Rent which Tenant is required to pay hereunder shall be the unconditional obligation of Tenant and shall be payable in full when due and payable, without notice or demand, and without any setoff, abatement, deferment, deduction or counterclaim whatsoever."

51. **Base Monthly Rental is due on the first of the month.** Section 5.01 of each Lease provides that the Tenant's obligation to pay Base Monthly Rental begins on the Commencement Date and that "subsequent monthly installments of Base Monthly Rental are due and payable on or before the first day of each succeeding calendar month during the Lease Term."

52. **Taxes are the Tenant's obligation, and the Landlords quote the provision whole.** Section 7.01(a) of the 5000 Taku Lease provides in relevant part: "Landlord shall cause all tax bills for the Premises to be issued in Tenant's name to the address designed by Tenant in Section 16.01 below. Subject to the provisions of this Article VII, Tenant shall pay directly to the applicable taxing authority, prior to the earlier of delinquency or the accrual of interest on the unpaid balance . . . all taxes and assessments of every type or nature assessed against or imposed upon the Property, Tenant, or Landlord," including "[a]ll real estate taxes or assessments upon the Property or any part thereof." The same Section requires the Tenant, before the earlier of delinquency or the accrual of interest, to "provide Landlord with receipts showing that each tax and assessment payment required by this Section 7.01(a) . . . was made in a timely fashion." The Landlords quote the provision in full because it opens with an obligation of the Landlord's own. The Tenant's duty does not depend on the answer: no Defendant has ever disputed that the Alaska real property taxes are the Tenant's obligation, no Defendant has asserted that any tax bill went astray, and no Defendant has communicated with the Landlords at all since August 5, 2026. Section 7.01(a) of the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease is identical except that it reads "the Property" in place of "the Premises."

53. **Late charges and default interest.** Section 5.06 of each Lease provides:

> "Any payment of Base Monthly Rental received more than five (5) days after its due date shall, in addition to any other remedy of Landlord, incur a late charge of five percent (5%) (which late charge is intended to compensate Landlord for the cost of handling and processing such delinquent payment and should not be considered interest) and bear interest at the Default Rate, such interest to be computed from and including the date such payment was due through and including the date of the payment; provided, however, in no event shall Tenant be obligated to pay a sum of late charge and interest higher than the maximum legal rate then in effect. Any payment of a Monetary Obligation which is not paid to Landlord by Tenant on or prior to the date such payment is due to Landlord shall bear interest at a rate of interest per annum equal to the Default Rate."

Article I of each Lease defines the "Default Rate" as "18% per annum or the highest rate permitted by Law, whichever is less."

54. **Monetary default is self-executing.** Section 13.01 of each Lease enumerates the Events of Default. Section 13.01(b) provides that an Event of Default occurs "if any Rental or other Monetary Obligation due under this Lease is not paid within five (5) days of the date when due." Section 13.01(b) requires no notice and affords no cure period. Section 13.01(c) provides that an Event of Default occurs "if Tenant fails to pay, prior to delinquency, any Taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against the Property." Section 13.01(j) provides that an Event of Default occurs "if there is an 'Event of Default' or other breach or default by Tenant pursuant to any of the other Transaction Documents or any Other Agreement, after the passage of all applicable notice and cure or grace periods." Article I of each Lease defines "Transaction Documents" as "this Lease, the Purchase and Sale Agreement, any other leases between any Landlord entity and any Tenant entity with respect to any other

properties purchased by any Landlord entity pursuant to the Purchase and Sale Agreement, and all documents related to any of the foregoing," and separately defines "Other Agreements" as "all agreements and instruments now or hereafter entered into between, among or by any of the Tenant Entities, with, or for the benefit of, any of the Landlord Entities, including, without limitation, leases, promissory notes and guaranties, but excluding this Lease and all other Transaction Documents." On information and belief, the Properties were purchased by the Landlord entities under the Purchase and Sale Agreement referred to in the Article I definition, and each of the other three Leases is therefore a Transaction Document as to each Lease. In the alternative, and in any event, each of the other three Leases is an agreement entered into between a Tenant Entity and a Landlord Entity that is not this Lease, and is therefore an Other Agreement. Section 13.01(j) reaches a default under either. Section 13.01(k) provides that an Event of Default occurs where "a Transfer occurs without the written consent of Landlord (except to the extent that such consent is not required and Tenant otherwise complies with the provisions of Article XV of this Lease)." The Events of Default under Section 13.01(b) of each of the other Leases require no notice and afford no cure period, and all applicable notice and cure or grace periods under those Leases have accordingly passed.

55. **The Landlord's remedies are cumulative and immediate.** Section 13.02 of each Lease opens: "Upon the occurrence of an Event of Default, with or without notice or demand, except as otherwise expressly provided herein or such other notice as may be required by statute and cannot be waived by Tenant, Landlord shall be entitled to exercise, at its option, concurrently, successively, or in any combination, all remedies available at

Law or in equity," and then enumerates specific remedies, including termination under Section 13.02(a), recovery of possession under Sections 13.02(b) and (c), an action for damages under Section 13.02(d), reletting under Section 13.02(e), acceleration under Section 13.02(g), recovery of all Costs under Section 13.02(h), appointment of a receiver under Section 13.02(k), and equitable relief including specific performance under Section 13.02(l). Section 13.03 makes the remedies "cumulative and not exclusive of one another."

56. **Acceleration.** Section 13.02(g) of each Lease permits the Landlord:

> "to accelerate and recover from Tenant all Rent due and owing and scheduled to become due and owing under this Lease, discounted to present value, both before and after the date of such breach for the entire original scheduled Lease Term, and Landlord may collect the same by distress or otherwise"

57. Section 13.02(g) requires the accelerated sum to be "discounted to present value" but specifies no discount rate. No provision of any of the four Leases supplies a discount rate, an index, or a formula. The determination of the appropriate rate and the resulting present value is committed to this Court.

58. **Receiver.** Section 13.02(k) of each Lease provides:

> "without limiting the generality of the foregoing or limiting in any way the rights of Landlord under this Lease or otherwise under applicable Laws, at any time after the occurrence, and during the continuance, of an Event of Default, Landlord shall be entitled to apply for and have a receiver appointed under applicable Law by a court of competent jurisdiction in any action taken by Landlord to enforce its rights and remedies hereunder in order to protect and preserve Landlord's interest under this Lease or in the Property, the Existing Personalty and the Personalty, and in connection therewith, TENANT HEREBY IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER AFTER THE

OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT"

59. **The Landlord's inspection right and the Tenant's reporting obligations.** Section 10.01 of each Lease entitles the Landlord, "at all reasonable times and upon giving reasonable prior notice (which may be given by telephone, text or email, and which need not be given in the event of an emergency), without delay, hindrance or restriction, to enter the Property or any part thereof and inspect the same." The same Section provides that the Landlord shall not access, copy, distribute, disclose, review, read, or otherwise interact with information covered by the Health Insurance Portability and Accountability Act of 1996 or any of the Tenant's other patient records, and provides that in exercising the Landlord's right to re-enter the Property the Landlord and its agents shall be accompanied at all times by a representative of the Tenant. Section 10.02(b) requires the Tenant, on or before each February 15, to deliver complete financial statements of the Tenant Entities, income statements for the business at the Property, and a statement identifying each Subtenant, the rentals payable by each Subtenant, and the revenue received from each.

60. **The only insurance running to the Landlords.** Section 7.03(a)(iv) of each Lease requires the Tenant to carry "[r]ental value insurance, equal to 100% of the Base Annual Rental (as the same may adjusted hereunder) for a period of not less than twelve (12) months basic period plus a six (6) month extended period of indemnity," and provides that such rent obligations "shall be paid directly to Landlord." That coverage "is to follow form of the special cause of loss coverage and is not to contain a co-insurance clause." It answers a physical loss, and no Event of Default triggers it. The Landlords plead it because

it is the only instrument in any of the four Leases that runs to them in the nature of security, and because the Tenant has stopped delivering the certificates the Leases require and the Landlords cannot presently confirm that any coverage remains in force.

61. **The Landlord's self-help cure right, and the waiver of any interest in the Tenant's personal property.** Section 13.02(i) of each Lease permits the Landlord, at its sole option and without any obligation to do so, to "correct such breach or default and charge Tenant all Costs incurred by Landlord therein, plus an administrative fee of five percent (5%) of such Costs," together with interest at the Default Rate. The third unnumbered paragraph following Section 13.02(l) further gives the Landlord the right, "upon at least ten (10) days' notice to Tenant (or without notice in the event of a bona fide emergency effecting material damage to property or endangering life or health) to cure any breach by Tenant at Tenant's sole cost and expense." Section 14.01 provides that the "Landlord shall have no interest in any personal property owned by Tenant" and that the "Landlord waives any right, title, or interest that Landlord may have in Tenant's personal property."

62. **No transfer without consent; written assumption required.** Section 15.02 of each Lease provides in relevant part:

> "Any assignment, sublease, transfer, conveyance, pledge or mortgage by Tenant, whether voluntary or involuntary, whether by operation of Law (for example, by merger) or otherwise, of any part or all of this Lease, or of any part or all of the leasehold estate created by this this Lease, or any interest herein is defined in this Agreement as a 'Transfer'. No Transfer shall occur without the prior written consent of Landlord, which consent shall not unreasonably be withheld. . . . At the time of any assignment of this Lease which is approved in

> writing by Landlord, the assignee shall assume all of the obligations of Tenant under this Lease pursuant to a written assumption agreement in form and substance reasonably acceptable to Landlord. Such assignment of this Lease shall not relieve Tenant of its obligations respecting this Lease unless otherwise agreed to by Landlord. Any transfer, mortgage, assignment or pledge of this Lease by Tenant shall be voidable at the sole option of Landlord."

63. Section 15.02 of the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease further provides: "If, pursuant to any provision of this Section 15.02, this Lease is assigned or transferred, or if all or any part of the Property is sublet or occupied by anybody other than Tenant, Landlord may collect rent from the assignee, transferee, subtenant or occupant, and apply the net amount collected to the Rent and Additional Rent reserved in this Lease, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of any covenant or condition of this Lease or a release of Tenant from the performance or further performance by Tenant of its obligations under this Lease." Section 15.02 of the 5000 Taku Lease is identical except that it reads "the Premises" in place of "the Property."

64. Section 15.02 contains a limited carve-out permitting the Tenant to assign or sublet without consent in five enumerated circumstances, including "(ii) to any parent, affiliate or direct or indirect subsidiary of Tenant," "(iii) to an entity which controls, is controlled by or is under common control with Tenant," and "(v) or the sale by Tenant of any of its membership interests to a private equity firm or other buyer." That carve-out is expressly conditioned: it applies only "provided that Tenant remains liable for the performance of the terms of this Lease," and it requires that "Tenant shall give Landlord a courtesy written notice at lease [sic] thirty (30) days in advance of the assignment or

sublease, along with such other customary information as Landlord may reasonably request regarding the identity of the assignee or subtenant, together with updated insurance certifications."

65. **Attorneys' fees are mandatory.** Section 17.07 of each Lease provides:

> "In the event of any judicial or other adversarial proceeding concerning this Lease, to the extent permitted by Law, the prevailing party shall be entitled to recover all of its reasonable attorneys' fees and other Costs in addition to any other relief to which it may be entitled. . . . The parties hereby expressly intend that such award of reasonable attorneys' fees and costs shall be mandatory and not discretionary."

Article I of each Lease defines "Costs" broadly to include "reasonable attorneys' fees and expenses, court costs, expert witness fees, costs of tests and analyses, travel and accommodation expenses, deposition and trial transcripts, copies and other similar costs and fees, brokerage fees, escrow fees, title insurance premiums, appraisal fees, stamp taxes, recording fees, recordation taxes and transfer taxes or fees, as the circumstances require."

66. **No guaranty exists.** None of the four Leases is guaranteed. No guarantor is named, no guaranty is attached, and Exhibits C, D, E, and G to each Lease are marked "NONE" or "INTENTIONALLY OMITTED." On the face of the papers, Zinnia Health LLC is the sole obligor—which is precisely why the identity of the entity actually performing matters.

### C. Zinnia Health LLC Has Never Paid Rent on Any Property

67. From the inception of the 5000 Taku Lease through July 30, 2026, the Landlords' general ledger records total receipts of $1,618,400.00 on the 5000 Taku Lease.

68. Not one dollar of that sum was paid by Zinnia Health LLC. Zinnia Health LLC, the tenant named on all four Leases, appears nowhere in the ledger as a payor on any Property.

69. The payors on the 5000 Taku Lease, in sequence, were: Bryte Health, for June 2024 through February 2025 and for April 2025; Uris Hall LLC, for March 2025, May 2025, and June 2025; Golden Peak Recovery Inc., for July 2025, October 2025, and December 2025; Cardinal Recovery LLC, for August 2025, September 2025, and November 2025; Uris Hall LLC again, for January 2026 and February 2026; and Uris Hall LLC again on June 29, 2026, in the amount of $164,800.00, remitted for the March 2026 and April 2026 rent.

70. On information and belief, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC are each affiliates of ZH Operations LLC d/b/a Luna Health Group, and each is among the seven operating companies held beneath ZH Operations LLC.

71. On June 29, 2026 at 1:54 p.m., Annie Tran of the accounts-payable department of Luna Health Group transmitted a payment confirmation to representatives of the Landlords, on a Luna Health Group form, stating: "Please note that the payments listed below have been processed. Attached are the payment confirmations for your records." The itemization identified "Uris Hall LLC - AK Rent (March + April)." The Luna organization thus characterized its own payment as rent under an Alaska lease, in writing, to the Landlords.

72. No payment of any kind has ever been made on the 4950 Taku Lease, the 101 Bunnell Lease, or the 102 Stewart Lease. Those three Leases are one hundred percent unpaid from the beginning of the rent obligation in June 2025 forward.

73. The last payment received by any Landlord on any of the four Properties was the Uris Hall LLC payment of June 29, 2026.

**D. The Luna Defendants Took Over the Business and Operated the Properties**

74. On information and belief, ZH Operations LLC d/b/a Luna Health Group acquired the assets of Zinnia Health LLC, including the operating business conducted at the four Anchorage Properties.

75. The acquisition of the assets of Zinnia Health LLC is recited in the Landlords' own default notice of May 15, 2026, which describes the Tenant's failure "to properly document the assignment of the Lease subsequent to the acquisition of the assets of Zinnia Health." That notice does not identify the acquirer, and the Landlords therefore plead the acquirer's identity on information and belief.

76. The transition is likewise reflected in the ledger. Beginning in March 2025, the source of rent on the 5000 Taku Lease shifted away from Bryte Health and to the Luna operating companies, and by mid-2025 those subsidiaries, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC, were the only entities paying rent to 5000 Taku Investors LLC.

77. The public record fixes when the operating business was placed in Uris Hall LLC, and it was placed there immediately. The 5000 Taku Lease bears the date June 6, 2024. Seven days later, on June 13, 2024, Uris Hall LLC obtained National Provider

Identifier 1366285934 from the Centers for Medicare & Medicaid Services, giving its practice location as 5000 Taku Drive, Anchorage, and its primary taxonomy as Substance Abuse Rehabilitation Facility. On the same day, June 13, 2024, Tenerife LLC, another of the operating companies within the same group, obtained National Provider Identifier 1497598064, giving its practice location as 2162 Lawrence Street, Denver, Colorado, a property leased by an affiliate of the Landlords under a lease dated May 30, 2024, and giving the identical primary taxonomy. Both enrollments name the same authorized official, Gilbert Yates, and report the same telephone number. Neither Uris Hall LLC nor Tenerife LLC is a party to any lease with any Landlord or Landlord affiliate. Uris Hall LLC registered to transact business in Alaska on July 15, 2024. It then obtained Alaska business license number 2204982 on October 11, 2024, in the name Uris Hall LLC, and Alaska business license number 2209851 on January 21, 2025, under the business name Anchorage Recovery Center. Both licenses give the licensed premises as 5000 Taku Drive, Anchorage, both mail to 520 Newport Center Drive, Suite 550, Newport Beach, California, and both remain active through December 31, 2026. Throughout that period, and to this day, the assignment and assumption documents Section 15.02 of the 5000 Taku Lease requires have never been executed. Since that time, and on information and belief, Luna Health Group has operated the Anchorage facilities, and Uris Hall LLC operates at the Anchorage campus as Anchorage Recovery Center. On July 31, 2026, Steve Levin of Eagle Capital Health Ventures transmitted to the Landlords' representatives a construction budget memorandum dated July 31, 2026 for the Luna Health Group Anchorage campus,

estimating approximately $7.5 million in hard construction costs across 5000 Taku Drive (Buildings A, B, and C), 102 Stewart Street, 101 Bunnell Street, and 4950 Taku Drive.

78. Every rent communication, payment confirmation, and payment commitment concerning the Anchorage Properties reflected in the Landlords' correspondence record for the period May 15, 2026 through August 6, 2026 came from Luna Health Group personnel or Luna-affiliated principals. None came from Zinnia Health LLC.

79. What the Luna Defendants did at 5000 Taku Drive they did not do anywhere else. No Alaska business license has been issued to any Defendant, or to any person, for premises at 4950 Taku Drive, at 101 Bunnell Street, or at 102 Stewart Street. No organization enrolled with the Centers for Medicare & Medicaid Services reports a practice location at any of those three addresses; of the fifteen organizations enrolled as substance-abuse rehabilitation facilities at practice locations in Anchorage, exactly one is at a Property, and that one is Uris Hall LLC at 5000 Taku Drive. Zinnia Health LLC took four leases, the business opened at one Property, and the rent went unpaid at all four. On information and belief, the Luna Defendants have therefore taken possession of the Properties, taken the benefit of the leasehold estates, operated licensed treatment facilities in the buildings, paid rent on the 5000 Taku Lease when they elected to pay, and directed planning for capital improvements to the Properties—while declining to place their names on the instruments that give them the right to be there.

**E. The Notices of Default**

80. On May 15, 2026, counsel for the Landlords served a written notice of default addressed to Zinnia Health LLC and ZH Operations LLC at 520 Newport Center, Suite

550, Newport Beach, California 92660, Attn: Adam Bhaijee, Yossie Neiman, Dan Levy, Steve Levin, and Harrison Katzen, with copies to the Tenant's counsel (the "Default Letter"). A true and correct copy of the Default Letter, together with its Exhibit A, is attached as **Exhibit E**.

81. **An earlier notice of default preceded it.** The May 15, 2026 letter was not the first notice of default served on the Tenant. On September 10, 2025, the same counsel served a written notice of default addressed to Zinnia Health LLC at 520 Newport Center, Suite 550, Newport Beach, California 92660, Attention: Adam Bhaijee, with a copy to the Tenant's counsel at Paganelli Law Group. That notice identified the same five leases; stated that it served "as notice to Tenant of Tenant's Event of Default, as defined in Article 13.01(b) of the Leases, as a result of Tenant's failure to timely pay Landlord Base Monthly Rental"; attached an itemization of the defaults as its Exhibit A; and demanded "the immediate and full payment of $846,700.00 plus all late charges, fees, and interest accrued thereon." Eight months later the arrears demanded had grown to $1,442,571.56. The itemization attached to that notice rests on assumptions the Landlords do not plead here. It computed the 4950 Taku and 101 Bunnell arrears from a December 1, 2024 rent commencement rather than the April 1, 2025 Commencement Date that Section 2.02 of each of those Leases fixes, and it stated the 102 Stewart monthly rate at twice the Base Monthly Rental that Section 2.05 fixes. The arrears pleaded here are computed instead on Exhibit A to the Default Letter, which supersedes the earlier itemization and states a smaller sum for each of those three Properties. A true and correct copy of the September 10, 2025 notice of default, together with its Exhibit A, is attached as Exhibit F.

82. The Default Letter identified all five leases then in place between the Landlord entities and the Tenant, including each of the four Anchorage Leases, and stated that it "shall serve as notice to Tenant of Tenant's Events of Default, as defined in Article 13.01(b) of the Leases, as a result of Tenant's failure to timely pay Landlord Base Monthly Rental."

83. The Default Letter demanded "the immediate and full payment of $1,442,571.56 which amount is the total outstanding balance of Base Monthly Rental, plus all late charges, fees, and interest accrued thereon, in accordance with Section 5.06 of the Lease, as of May 13, 2026."

84. Exhibit A to the Default Letter itemized the arrears by Property, month, and amount. As of May 13, 2026, the amounts owed on the four Anchorage Properties were:

| Property | Base Rent due | Taxes due | Penalties and interest due | Total due |
|---|---|---|---|---|
| 5000 Taku Drive | $247,200.00 | $43,997.13 | $17,155.00 | $308,352.13 |
| 4950 Taku Drive | $85,510.00 | $2,106.20 | $10,613.22 | $98,229.42 |
| 101 Bunnell Street | $553,300.00 | $16,817.51 | $68,673.78 | $638,791.29 |
| 102 Stewart Street | $216,290.00 | $9,524.18 | $26,845.21 | $252,659.39 |
| Total, four Anchorage Properties | $1,102,300.00 | $72,445.02 | $123,287.21 | $1,298,032.23 |

85. Exhibit A to the Default Letter also itemized the delinquent real property taxes by parcel and installment: on 5000 Taku Drive, the 2025-1 and 2025-2 installments on parcels 006-293-17-000, 006-293-18-000, and 006-293-19-000, due June 30, 2025 and August 31, 2025, totaling $43,997.13; on 4950 Taku Drive, the 2025-1 and 2025-2 installments on parcel 006-292-20-000, totaling $2,106.20; on 101 Bunnell Street, the

2025-1 and 2025-2 installments on parcel 006-292-39-000, totaling $16,817.51; and on 102 Stewart Street, the 2025-1 and 2025-2 installments on parcel 006-292-19-000, totaling $9,524.18.

86. The Default Letter further stated that "each Tenant, respectively, has violated Section 15.02 of the Lease by failing to properly document the assignment of the Lease subsequent to the acquisition of the assets of Zinnia Health," and served "notice to Tenant that Tenant is in default under Section 13.01(k) of the Lease for failure to properly document their assignment and submit the assignment documents to Landlord for Landlord's consent as required under the Lease pursuant to Article 15.02."

87. The Default Letter closed the point with a specific demand: "Please sign and return the Assignment and Assumption of Lease and Consent to Assignment and Assumption of Lease that was previously circulated by Landlord."

88. No Defendant has ever signed or returned the Assignment and Assumption of Lease or the Consent to Assignment and Assumption of Lease. No Defendant ever requested the Landlords' written consent to a Transfer. No Defendant ever delivered the thirty days' advance written notice, the assignee information, or the updated insurance certifications that Section 15.02 requires even for a permitted transfer.

89. No Defendant disputed the Default Letter, disputed the arrears itemized in its Exhibit A, or asserted that the sums demanded were not owed.

**F. Nonpayment Since the Default Letter**

90. The Base Monthly Rental installments coming due on May 1, June 1, July 1, and August 1, 2026 have gone unpaid on each of the four Properties. The May 1, 2026

installment is included in the arrears itemized in Exhibit A to the Default Letter. The single payment received during that period, described below, was applied to earlier installments.

91. On June 29, 2026, Uris Hall LLC paid $164,800.00 on the 5000 Taku Lease, applied to the March 2026 and April 2026 Base Monthly Rental installments of $82,400.00 each. Crediting that payment in full, unpaid Base Monthly Rental on the 5000 Taku Lease is not less than $337,016.00, representing the unpaid installments of $82,400.00 due May 1, 2026, $84,872.00 due June 1, 2026, $84,872.00 due July 1, 2026, and $84,872.00 due August 1, 2026. The June, July, and August installments reflect the Rental Adjustment that took effect on the June 6, 2026 Adjustment Date, which the parties have applied from the first day of the month in which the Adjustment Date falls, so that the full adjusted rate is payable for June 2026.

92. On the 4950 Taku Lease, the arrears itemized in Exhibit A to the Default Letter—twelve consecutive unpaid monthly installments running from June 1, 2025 through May 1, 2026, totaling $85,510.00—have been augmented by three further unpaid installments of $8,755.00 each for June, July, and August 2026. Unpaid Base Monthly Rental on the 4950 Taku Lease is not less than $111,775.00.

93. On the 101 Bunnell Lease, the arrears itemized in Exhibit A to the Default Letter—twelve consecutive unpaid monthly installments running from June 1, 2025 through May 1, 2026, totaling $553,300.00—have been augmented by three further unpaid installments of $56,650.00 each for June, July, and August 2026. Unpaid Base Monthly Rental on the 101 Bunnell Lease is not less than $723,250.00.

94. On the 102 Stewart Lease, the arrears itemized in Exhibit A to the Default Letter—twelve consecutive unpaid monthly installments running from June 1, 2025 through May 1, 2026, totaling $216,290.00—have been augmented by three further unpaid installments of $22,145.00 each for June, July, and August 2026. Unpaid Base Monthly Rental on the 102 Stewart Lease is not less than $282,725.00.

95. The delinquent real property taxes itemized in Exhibit A to the Default Letter remain unpaid on each of the four Properties.

96. Rent, taxes, late charges, and default interest continue to accrue on each Property, and the amounts stated in this Complaint increase with the passage of each month.

**G. The Remaining Term**

97. Each of the four Leases carries an Initial Term of fifteen years. As of August 1, 2026, the scheduled remaining Initial Term and the aggregate contract rent scheduled to become due are:

| Property | Months remaining | Gross remaining rent |
|---|---:|---:|
| 5000 Taku Drive | 155 | $15,821,285.32 |
| 101 Bunnell Street | 164 | $11,388,682.88 |
| 102 Stewart Street | 164 | $4,451,939.68 |
| 4950 Taku Drive | 164 | $1,760,069.24 |
| Total | | $33,421,977.12 |

98. Those figures reflect Base Monthly Rental and the three percent annual Rental Adjustment through the balance of the Initial Term only. They exclude Additional Rent, Taxes, insurance, late charges, default interest, Costs, and any Extension Term.

99. Section 13.02(g) requires the accelerated sum to be "discounted to present value." No discount rate appears anywhere in any of the four Leases. Applying a five percent annual discount rate for illustration only, the present value of the gross remaining rent on the four Properties as of August 1, 2026 would be $23,948,673.43. The Landlords do not concede that five percent is the correct rate. The rate and the resulting present value must be determined by this Court.

**H. The Collapse of Negotiations**

100. Between June and August 2026, representatives of the Luna organization and its financial sponsors repeatedly acknowledged the outstanding obligations. On June 4, 2026, Steve Levin, writing for Eagle Capital Health Ventures on behalf of TriEdge, committed in writing that the Landlords "will be brought current in all rent and real estate taxes @ approximately $826k with the exception of Alaska phase 2." On June 26, 2026, in response to an itemized demand that included March and April 2026 Alaska rent of $82,400.00 each, Yossie Neiman answered "Monday." On July 1, 2026, Mr. Neiman wrote: "We owe 100k on phase 2. will handle."

101. On August 3, 2026 at 9:17 p.m., the Luna side circulated proposed deal terms providing that rent be brought current only on the four Alaska properties and that "[b]ack rent prior to 5/1 shall be forgiven." At 9:33 p.m. the same evening, Mr. Levin wrote that "[t]he focus for the discussion is solely on Alaska."

102. On August 5, 2026 at 9:09 a.m., the scheduled meeting was canceled. Neither Eagle Capital Health Ventures, nor 980 Investments, nor TriEdge, nor Zach Holdings, the entities through which the Luna organization had conducted the discussions described in paragraphs 100 and 101—has communicated with the Landlords since, and no Defendant has communicated with the Landlords since.

103. The arrears remain unpaid. The assignment and assumption documents remain unsigned. The Luna Defendants remain in possession.

**I. The Properties Require a Receiver to Preserve Them Pending Judgment**

104. Events of Default have occurred under Sections 13.01(b), 13.01(c), 13.01(j), and 13.01(k) of each of the four Leases, all applicable notice and cure or grace periods having passed as alleged in paragraph 54, and each such Event of Default is continuing. This action is an action taken by the Landlords to enforce their rights and remedies under the four Leases, within the meaning of Section 13.02(k).

105. **The Tenant contractually consented to the appointment of a receiver.** Section 13.02(k) of each of the four Leases provides, verbatim:

> "without limiting the generality of the foregoing or limiting in any way the rights of Landlord under this Lease or otherwise under applicable Laws, at any time after the occurrence, and during the continuance, of an Event of Default, Landlord shall be entitled to apply for and have a receiver appointed under applicable Law by a court of competent jurisdiction in any action taken by Landlord to enforce its rights and remedies hereunder in order to protect and preserve Landlord's interest under this Lease or in the Property, the Existing Personalty and the Personalty, and in connection therewith, TENANT HEREBY IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER AFTER THE

OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT"

106. Section 13.02(k) does two separate things. It confers on each Landlord an affirmative contractual right "to apply for and have a receiver appointed." And it extracts from the Tenant an irrevocable consent to that appointment together with an express waiver of "ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST" it. The consent and the waiver are conditioned on one thing only: the occurrence and the continuance of an Event of Default. That condition is satisfied, as alleged in paragraph 104.

107. **The Tenant bargained away any right to oppose the appointment.** The consent and the waiver appear in capital letters in the body of each of the four Leases, and they form part of the consideration for a fifteen-year net lease of an operating behavioral-health campus supported by no guaranty, no security deposit, and no letter of credit. The Tenant took the benefit of that bargain—possession of four buildings and the right to conduct a licensed treatment business inside them—and the Landlords are entitled to the term the Tenant gave in exchange. The waiver is by its own terms irrevocable, and nothing in the Leases makes it conditional on the Landlords' proof of anything beyond a continuing Event of Default.

108. The grounds alleged in paragraphs 109 through 118 below are pleaded independently of Section 13.02(k). Each is pleaded so that the Landlords' request for a receiver stands on its own if the contractual consent is disregarded, is held unenforceable, or is held not to bind a particular Defendant, and each is pleaded cumulatively with the consent rather than in substitution for it.

109. **The Properties anchor a licensed behavioral-health operation, and the Landlords receive nothing from it.** Uris Hall LLC does business at the Anchorage campus as Anchorage Recovery Center. It holds Alaska business license number 2204982 in its own name and Alaska business license number 2209851 under the business name Anchorage Recovery Center, both for licensed premises at 5000 Taku Drive and both active through December 31, 2026, and it holds National Provider Identifier 1366285934, which gives its practice location as 5000 Taku Drive and its primary taxonomy as Substance Abuse Rehabilitation Facility. The licensure, the census, the payor relationships, and the goodwill associated with the Anchorage campus are attributes of the operation the four Leases were made to house. They are assets of substantial value that the Landlords cannot reach, and they are held by entities that are paying the Landlords nothing.

110. **The campus is being planned for expansion, not wind-down.** On July 31, 2026, Steve Levin of Eagle Capital Health Ventures transmitted to the Landlords' representatives a construction budget memorandum dated July 31, 2026 estimating approximately $7.5 million in hard construction costs across 5000 Taku Drive (Buildings A, B, and C), 102 Stewart Street, 101 Bunnell Street, and 4950 Taku Drive. On the basis of the licenses and enrollments identified in the preceding paragraph, of that memorandum, and of the absence of any observed patient activity at the Properties, the Landlords are informed and believe that the buildings are not presently admitting and treating patients on site, and that the Luna organization is conducting treatment operations at other locations under the licensure associated with the Anchorage campus, generating revenue including receipts from third-party payors. A receiver is needed to take control of the Properties, of

the licensure and permits associated with them, and of the revenues earned under that licensure, before any of them is dissipated or transferred.

111. **The rent has gone unpaid.** Unpaid Base Monthly Rental is not less than $337,016.00 on the 5000 Taku Lease, $111,775.00 on the 4950 Taku Lease, $723,250.00 on the 101 Bunnell Lease, and $282,725.00 on the 102 Stewart Lease—an aggregate of not less than $1,454,766.00—and it increases every month. No installment on the 4950 Taku, 101 Bunnell, or 102 Stewart Leases has been paid by any person from June 1, 2025 forward. The last payment received on any of the four Properties was made on June 29, 2026, by an entity that is not the Tenant.

112. **Real estate taxes securing liens against the Landlords' own fee title are delinquent.** The 2025-1 and 2025-2 real property tax installments on the six Anchorage parcels itemized in paragraph 85, namely parcels 006-293-17-000, 006-293-18-000, 006-293-19-000, 006-292-20-000, 006-292-39-000, and 006-292-19-000—came due on June 30, 2025 and August 31, 2025, total $72,445.02, and remain unpaid. Those taxes are assessed against the Properties and secure liens against the fee title the Landlords hold. The consequence of the Tenant's nonperformance therefore attaches to the Landlords' own ownership interest rather than to the Tenant's leasehold, and it compounds with penalties and interest for as long as it goes unpaid. Section 13.01(c) of each Lease makes that delinquency an independent Event of Default, which confirms that the parties themselves understood the risk it creates for the Landlords.

113. **What Alaska law does with a tax delinquency.** Delinquent municipal real property taxes in Alaska are not enforced by the sale of a tax lien certificate to a stranger.

A municipality "shall . . . annually present a petition for judgment and a certified copy of the foreclosure list for the previous year's delinquent taxes in the superior court for judgment," publish the foreclosure list for four consecutive weeks in a newspaper of general circulation, and mail notice to the last known owner of each property on the list. AS 29.45.330(a). Completion of those steps "constitutes and has the same force and effect as the filing of an individual and separate complaint and service of summons to foreclose a lien against each property described on the foreclosure list." AS 29.45.330(c). Properties transferred to the municipality on the judgment "are held by the municipality for at least one year," during which a party having an interest in the property may redeem it by paying the lien amount plus penalties, interest, and costs. AS 29.45.400. The statutory notice must warn "that all properties ordered sold under the judgment, unless redeemed, shall be deeded to the municipality immediately on expiration of the period of redemption and that every right or interest of a person in the properties will be forfeited forever to the municipality," and the right of redemption "expires 30 days after the date of the first notice publication." AS 29.45.440(a), (b). Those provisions bind the Municipality of Anchorage, a home rule municipality, because AS 29.10.200(55) applies AS 29.45.010–29.45.560 to home rule municipalities as prohibitions on acting otherwise than as provided. The consequence of the Tenant's nonperformance is therefore a judgment of foreclosure entered against the Landlords' own fee title, on a schedule the Landlords do not control.

114. **The Tenant of record holds nothing, has never paid anything, and offers no source of recovery. Zinnia Health LLC has never remitted a dollar to any Landlord on any of the four Leases. It appears nowhere as a payor in the Landlords'**

**general ledger for the 5000 Taku Property at any time, and no payment of any kind has ever been made on the 4950 Taku, 101 Bunnell, or 102 Stewart Leases.** No Lease is guaranteed; Exhibits C, D, E, and G to each Lease are marked "NONE" or "INTENTIONALLY OMITTED." There is no security deposit and no letter of credit. On information and belief, Zinnia Health LLC holds no assets from which a judgment could be satisfied. A money judgment against the Tenant of record is not an adequate substitute for control of the Properties and their revenues.

115. **The entities in possession are not parties to the Leases.** On information and belief, ZH Operations LLC d/b/a Luna Health Group, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC took possession of the Properties, operated the licensed treatment facilities inside them, and paid rent when they elected to pay it, while declining to sign the Assignment and Assumption of Lease and the Consent to Assignment and Assumption of Lease demanded on May 15, 2026 and never returned. None of them is a signatory to any of the four Leases. The result is that the buildings are occupied and operated by entities that owe the Landlords nothing on the face of the papers, and the entity that owes on the papers occupies nothing and pays nothing. No ordinary landlord remedy directed at the Tenant of record reaches the parties actually taking the benefit of the Properties.

116. **The Luna organization broke off all communication on August 5, 2026 and has not communicated since.** On August 3, 2026, the Luna side proposed that back rent accruing before May 1, 2026 "be forgiven" and narrowed the discussion to Alaska alone. On August 5, 2026 at 9:09 a.m., the scheduled meeting was canceled. Since that

moment no Defendant, and none of Eagle Capital Health Ventures, 980 Investments, TriEdge, or Zach Holdings, has communicated with the Landlords. The Landlords have no counterparty to deal with, no current information about the licensure held for their buildings or the revenues earned under it, and no assurance of any kind concerning the Properties.

117. **The revenues generated at the Properties stand at substantial risk of dissipation or diversion among affiliates before judgment.** Rent on the 5000 Taku Lease was remitted by a rotating series of affiliated entities—Uris Hall LLC, then Golden Peak Recovery Inc., then Cardinal Recovery LLC, then Uris Hall LLC again—none of which is the Tenant, and payments were transmitted through a single centralized accounts-payable function operating under the name Luna Health Group that determined which of the Landlords' invoices were paid, by which affiliate, and when. The organization is a holding company over seven operating companies, and, on information and belief, funds move among them at its direction. Operations at the Properties have continued while payment to the Landlords has stopped entirely. The revenues those operations generate are therefore going somewhere other than to the Landlords, and, on information and belief, they are being applied for the benefit of affiliates and insiders. Absent a receiver, nothing prevents the continued diversion of those revenues while this action is pending, and nothing preserves them for satisfaction of a judgment.

118. **The Landlords have no adequate remedy at law.** Under Section 5.04(a) of each Lease the Tenant bears sole responsibility for the Costs and obligations of every kind relating to the Properties, including maintenance, repairs, utilities, insurance, and taxes.

The Landlords have no ability to protect the Properties through the Tenant, which is not performing, or through the occupants, which deny the obligation and have stopped speaking to the Landlords. Damages awarded at the end of this case do not stop the tax delinquencies from compounding against the Landlords' fee title, do not preserve the physical condition of four healthcare buildings, and do not recover revenues that have already been moved beyond reach.

119. The Landlords do not seek the appointment of a receiver as a separate claim for relief. The Landlords will apply for the appointment by separate noticed motion under Fed. R. Civ. P. 66, seeking a receiver over the Properties and the revenues generated at them, with the powers this Court finds appropriate to preserve both pending judgment.

120. The Landlords are prepared to nominate to this Court a qualified and disinterested candidate for appointment, to submit that candidate's qualifications, conflicts disclosures, and proposed compensation terms for this Court's review, and to post any bond or other security this Court requires as a condition of the appointment. The Landlords will ask that any receiver appointed be directed to retain healthcare-regulatory counsel or consultants where specialized regulatory expertise is required, and be barred from conducting or maintaining any behavioral-health or substance-use treatment operation at any Property unless and until every license, certification, and approval required by Alaska law is in place. The Landlords are likewise prepared to submit a proposed order fixing the receiver's powers, bond, compensation, and reporting obligations, on such schedule as this Court directs.

121. The relief the Landlords will request by that motion is sought without prejudice to, and cumulatively with, every other remedy the Landlords seek in this action, including the money relief, the possession relief, and the accelerated rent requested in Counts I through IV, VI, and VIII. Section 13.03(a) of each Lease provides, verbatim:

> "All powers and remedies given by Section 13.02 to Landlord, subject to applicable Law, shall be cumulative and not exclusive of one another or of any other right or remedy or of any other powers and remedies available to Landlord under this Lease, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements of Tenant contained in this Lease, and no delay or omission of Landlord to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any other or subsequent Event of Default or impair any rights or remedies consequent thereto. Every power and remedy given by this Section or by Law to Landlord may be exercised from time to time, and as often as may be deemed expedient, by Landlord, subject at all times to Landlord's right in its sole judgment to discontinue any work commenced by Landlord or change any course of action undertaken by Landlord."

**J. Conditions Precedent and Mitigation**

122. All conditions precedent to the Landlords' right to the relief sought in this Complaint have occurred, have been performed, or have been waived or excused.

123. Each Landlord performed all of its own material obligations under its Lease, including delivery of possession of the Property to the Tenant, which the Tenant accepted and which, on information and belief, the Tenant and its affiliates have since occupied.

124. To the extent any notice was required by any Lease as a condition to the exercise of any remedy, that notice was given by the Default Letter of May 15, 2026 and by this Complaint. To the extent no notice was required—as under Section 13.01(b), which is self-executing on the sixth day after a payment comes due—none was necessary.

125. **The mitigation covenant.** The first unnumbered paragraph following Section 13.02(l) of each Lease provides: "Additionally, in the event of any default by Tenant, Landlord shall take commercially reasonable efforts to mitigate its damages, which obligation shall include listing the Property for lease at a commercially reasonable rental." Section 13.02(e) of the same Section provides that, "Except to the extent required by applicable Law, Landlord shall have no obligation to re-let the Property or any part thereof and shall in no event be liable for refusal or failure to re-let the Property or any part thereof." The Landlords plead the covenant in the unnumbered paragraph as the operative provision.

126. None of the four Properties has been surrendered to its Landlord. On information and belief, the buildings remain occupied and the operations conducted inside them continue, and no Defendant has tendered possession of any Property to any Landlord or offered to do so. A commercially reasonable reletting of premises the Landlords do not hold is not available to the Landlords until possession is recovered, which is among the relief sought in this action. Subject to that limitation, the Landlords have complied and will continue to comply with the covenant, and they will account for their mitigation efforts on any question of damages.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Lease—5000 Taku Drive
### (*5000 Taku Investors LLC against Zinnia Health LLC*)

127. The Landlords reallege and incorporate paragraphs 1 through 126.

128. The 5000 Taku Lease is a valid and enforceable written contract between 5000 Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant.

129. 5000 Taku Investors LLC performed all of its obligations under the 5000 Taku Lease, including delivery of possession of 5000 Taku Drive, which the Tenant accepted. All conditions precedent to 5000 Taku Investors LLC's right to recover have occurred, have been performed, or have been waived or excused.

130. Section 5.01 obligated Zinnia Health LLC to pay Base Monthly Rental on or before the first day of each month. Section 5.04(a) made that obligation unconditional and payable without notice, demand, setoff, abatement, deduction, or counterclaim. Section 7.01(a) obligated Zinnia Health LLC to pay all real property taxes on the Property directly to the taxing authority before delinquency.

131. The Landlords' general ledger for the 5000 Taku Lease reflects no payment of Base Monthly Rental by Zinnia Health LLC. Every sum the Landlord received on that Lease was remitted by another entity, and the Landlord credits every such sum in full. The installments due May 1, June 1, July 1, and August 1, 2026 remain unpaid by any person.

132. Zinnia Health LLC also failed to pay the 2025-1 and 2025-2 real property tax installments on Anchorage parcels 006-293-17-000, 006-293-18-000, and 006-293-19-000, which came due on June 30, 2025 and August 31, 2025 and total $43,997.13.

133. Each such failure that continued more than five days past the due date is an Event of Default under Section 13.01(b). The failure to pay taxes before delinquency is an independent Event of Default under Section 13.01(c). The Events of Default under the other three Leases are independent Events of Default under Section 13.01(j), each of the other three Leases being a Transaction Document or, in the alternative, an Other Agreement as alleged in paragraph 54, and all applicable notice and cure or grace periods under those Leases having passed.

134. As of May 13, 2026, the Default Letter itemized $308,352.13 owed on the 5000 Taku Lease, comprising $247,200.00 in Base Monthly Rental, $43,997.13 in taxes, and $17,155.00 in penalties and interest. Crediting the $164,800.00 paid by Uris Hall LLC on June 29, 2026 in full, unpaid Base Monthly Rental on the 5000 Taku Lease is not less than $337,016.00 as of the filing of this Complaint, exclusive of taxes, late charges, default interest, and Costs.

135. Under Section 5.06, 5000 Taku Investors LLC is entitled to a late charge of five percent of each delinquent Base Monthly Rental installment and to interest on all delinquent amounts at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, running from each original due date.

136. Under Section 13.02(g), 5000 Taku Investors LLC is entitled in the alternative to accelerate and recover all Rent scheduled to become due for the entire original scheduled Lease Term, discounted to present value. As of August 1, 2026, 155 months of the Initial Term remain and the gross remaining rent on the 5000 Taku Lease is $15,821,285.32.

Section 13.02(g) specifies no discount rate, and the present value must be determined by this Court.

137. Under Section 17.07, 5000 Taku Investors LLC is entitled to recover all of its reasonable attorneys' fees and other Costs, and that recovery is "mandatory and not discretionary."

138. 5000 Taku Investors LLC has been damaged by Zinnia Health LLC's breaches in an amount to be proven at trial.

**WHEREFORE**, Plaintiff 5000 Taku Investors LLC requests that this Court enter judgment in its favor and against Defendant Zinnia Health LLC awarding:

a. unpaid Base Monthly Rental on the 5000 Taku Lease in an amount not less than $337,016.00, together with all further installments coming due through the date of judgment;

b. unpaid Taxes and other Monetary Obligations in an amount not less than $43,997.13;

c. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

d. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

e. in the alternative to subparagraphs (a) through (d) as to future rent, accelerated Rent under Section 13.02(g) measured by $15,821,285.32 in gross remaining rent for the 155 months remaining in the Initial Term as of

August 1, 2026, discounted to present value at a rate determined by this Court;

f. possession of 5000 Taku Drive, Anchorage, Alaska 99508;

g. reasonable attorneys' fees and all other Costs under Section 17.07;

h. prejudgment and postjudgment interest; and

i. such other relief as this Court deems just.

**COUNT II**
**Breach of Lease—4950 Taku Drive**
**(*Bunnell Taku Investors LLC against Zinnia Health LLC)***

139. The Landlords reallege and incorporate paragraphs 1 through 126.

140. The 4950 Taku Lease is a valid and enforceable written contract between Bunnell Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant.

141. Bunnell Taku Investors LLC performed all of its obligations under the 4950 Taku Lease, including delivery of possession of 4950 Taku Drive, which the Tenant accepted. All conditions precedent to Bunnell Taku Investors LLC's right to recover have occurred, have been performed, or have been waived or excused.

142. Zinnia Health LLC has never made a single payment on the 4950 Taku Lease. The Base Monthly Rental installments due on the first day of every month from June 1, 2025 through August 1, 2026 are unpaid in full—at the abated rate of $4,250.00 for June through September 2025, at $8,500.00 for October 2025 through March 2026, and at the adjusted rate of $8,755.00 for April 2026 forward.

143. Zinnia Health LLC also failed to pay the 2025-1 and 2025-2 real property tax installments on Anchorage parcel 006-292-20-000, totaling $2,106.20.

144. Each such failure that continued more than five days past the due date is an Event of Default under Section 13.01(b). The failure to pay taxes before delinquency is an independent Event of Default under Section 13.01(c). The Events of Default under the other three Leases are independent Events of Default under Section 13.01(j), each of the other three Leases being a Transaction Document or, in the alternative, an Other Agreement as alleged in paragraph 54, and all applicable notice and cure or grace periods under those Leases having passed.

145. As of May 13, 2026, the Default Letter itemized $98,229.42 owed on the 4950 Taku Lease, comprising $85,510.00 in Base Monthly Rental, $2,106.20 in taxes, and $10,613.22 in penalties and interest. As of the filing of this Complaint, unpaid Base Monthly Rental is not less than $111,775.00, exclusive of taxes, late charges, default interest, and Costs.

146. Under Section 5.06, Bunnell Taku Investors LLC is entitled to a late charge of five percent of each delinquent Base Monthly Rental installment and to interest on all delinquent amounts at the Default Rate.

147. Under Section 13.02(g), Bunnell Taku Investors LLC is entitled in the alternative to accelerate all Rent scheduled to become due for the entire original scheduled Lease Term, discounted to present value. As of August 1, 2026, 164 months of the Initial Term remain and the gross remaining rent on the 4950 Taku Lease is $1,760,069.24. Section 13.02(g) specifies no discount rate, and the present value must be determined by this Court.

148. Under Section 17.07, Bunnell Taku Investors LLC is entitled to recover all of its reasonable attorneys' fees and other Costs, and that recovery is "mandatory and not discretionary."

149. Bunnell Taku Investors LLC has been damaged by Zinnia Health LLC's breaches in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Bunnell Taku Investors LLC requests that this Court enter judgment in its favor and against Defendant Zinnia Health LLC awarding:

a. unpaid Base Monthly Rental on the 4950 Taku Lease in an amount not less than $111,775.00, together with all further installments coming due through the date of judgment;

b. unpaid Taxes and other Monetary Obligations in an amount not less than $2,106.20;

c. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

d. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

e. in the alternative to subparagraphs (a) through (d) as to future rent, accelerated Rent under Section 13.02(g) measured by $1,760,069.24 in gross remaining rent for the 164 months remaining in the Initial Term as of August 1, 2026, discounted to present value at a rate determined by this Court;

f. possession of 4950 Taku Drive, Anchorage, Alaska 99508;

g. reasonable attorneys' fees and all other Costs under Section 17.07;

h. prejudgment and postjudgment interest; and

i. such other relief as this Court deems just.

**COUNT III**
**Breach of Lease—101 Bunnell Street**
**(*Bunnell Taku Investors LLC against Zinnia Health LLC*)**

150. The Landlords reallege and incorporate paragraphs 1 through 126.

151. The 101 Bunnell Lease is a valid and enforceable written contract between Bunnell Taku Investors LLC, as Landlord, and Zinnia Health LLC, as Tenant. Bunnell Taku Investors LLC is named as Landlord on the cover page, in the preamble, and in the notice provision of the 101 Bunnell Lease.

152. Bunnell Taku Investors LLC performed all of its obligations under the 101 Bunnell Lease, including delivery of possession of 101 Bunnell Street, which the Tenant accepted. All conditions precedent to Bunnell Taku Investors LLC's right to recover have occurred, have been performed, or have been waived or excused.

153. Zinnia Health LLC has never made a single payment on the 101 Bunnell Lease. The Base Monthly Rental installments due on the first day of every month from June 1, 2025 through August 1, 2026 are unpaid in full—at the abated rate of $27,500.00 for June through September 2025, at $55,000.00 for October 2025 through March 2026, and at the adjusted rate of $56,650.00 for April 2026 forward.

154. Zinnia Health LLC also failed to pay the 2025-1 and 2025-2 real property tax installments on Anchorage parcel 006-292-39-000, totaling $16,817.51.

155. Each such failure that continued more than five days past the due date is an Event of Default under Section 13.01(b). The failure to pay taxes before delinquency is an independent Event of Default under Section 13.01(c). The Events of Default under the other three Leases are independent Events of Default under Section 13.01(j), each of the other three Leases being a Transaction Document or, in the alternative, an Other Agreement as alleged in paragraph 54, and all applicable notice and cure or grace periods under those Leases having passed.

156. As of May 13, 2026, the Default Letter itemized $638,791.29 owed on the 101 Bunnell Lease, comprising $553,300.00 in Base Monthly Rental, $16,817.51 in taxes, and $68,673.78 in penalties and interest. As of the filing of this Complaint, unpaid Base Monthly Rental is not less than $723,250.00, exclusive of taxes, late charges, default interest, and Costs.

157. Under Section 5.06, Bunnell Taku Investors LLC is entitled to a late charge of five percent of each delinquent Base Monthly Rental installment and to interest on all delinquent amounts at the Default Rate.

158. Under Section 13.02(g), Bunnell Taku Investors LLC is entitled in the alternative to accelerate all Rent scheduled to become due for the entire original scheduled Lease Term, discounted to present value. As of August 1, 2026, 164 months of the Initial Term remain and the gross remaining rent on the 101 Bunnell Lease is $11,388,682.88. Section 13.02(g) specifies no discount rate, and the present value must be determined by this Court.

159. Under Section 17.07, Bunnell Taku Investors LLC is entitled to recover all of its reasonable attorneys' fees and other Costs, and that recovery is "mandatory and not discretionary."

160. Bunnell Taku Investors LLC has been damaged by Zinnia Health LLC's breaches in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Bunnell Taku Investors LLC requests that this Court enter judgment in its favor and against Defendant Zinnia Health LLC awarding:

a. unpaid Base Monthly Rental on the 101 Bunnell Lease in an amount not less than $723,250.00, together with all further installments coming due through the date of judgment;

b. unpaid Taxes and other Monetary Obligations in an amount not less than $16,817.51;

c. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

d. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

e. in the alternative to subparagraphs (a) through (d) as to future rent, accelerated Rent under Section 13.02(g) measured by $11,388,682.88 in gross remaining rent for the 164 months remaining in the Initial Term as of August 1, 2026, discounted to present value at a rate determined by this Court;

f. possession of 101 Bunnell Street, Anchorage, Alaska 99508;

g. reasonable attorneys' fees and all other Costs under Section 17.07;

h. prejudgment and postjudgment interest; and

i. such other relief as this Court deems just.

**COUNT IV**
**Breach of Lease—102 Stewart Street**
**(*FUD Neary LLC against Zinnia Health LLC*)**

161. The Landlords reallege and incorporate paragraphs 1 through 126.

162. The 102 Stewart Lease is a valid and enforceable written contract between FUD Neary LLC, as Landlord, and Zinnia Health LLC, as Tenant.

163. FUD Neary LLC performed all of its obligations under the 102 Stewart Lease, including delivery of possession of 102 Stewart Street, which the Tenant accepted. All conditions precedent to FUD Neary LLC's right to recover have occurred, have been performed, or have been waived or excused.

164. Zinnia Health LLC has never made a single payment on the 102 Stewart Lease. The Base Monthly Rental installments due on the first day of every month from June 1, 2025 through August 1, 2026 are unpaid in full—at the abated rate of $10,750.00 for June through September 2025, at $21,500.00 for October 2025 through March 2026, and at the adjusted rate of $22,145.00 for April 2026 forward.

165. Zinnia Health LLC also failed to pay the 2025-1 and 2025-2 real property tax installments on Anchorage parcel 006-292-19-000, totaling $9,524.18.

166. Each such failure that continued more than five days past the due date is an Event of Default under Section 13.01(b). The failure to pay taxes before delinquency is an

independent Event of Default under Section 13.01(c). The Events of Default under the other three Leases are independent Events of Default under Section 13.01(j), each of the other three Leases being a Transaction Document or, in the alternative, an Other Agreement as alleged in paragraph 54, and all applicable notice and cure or grace periods under those Leases having passed.

167. As of May 13, 2026, the Default Letter itemized $252,659.39 owed on the 102 Stewart Lease, comprising $216,290.00 in Base Monthly Rental, $9,524.18 in taxes, and $26,845.21 in penalties and interest. As of the filing of this Complaint, unpaid Base Monthly Rental is not less than $282,725.00, exclusive of taxes, late charges, default interest, and Costs.

168. Under Section 5.06, FUD Neary LLC is entitled to a late charge of five percent of each delinquent Base Monthly Rental installment and to interest on all delinquent amounts at the Default Rate.

169. Under Section 13.02(g), FUD Neary LLC is entitled in the alternative to accelerate all Rent scheduled to become due for the entire original scheduled Lease Term, discounted to present value. As of August 1, 2026, 164 months of the Initial Term remain and the gross remaining rent on the 102 Stewart Lease is $4,451,939.68. Section 13.02(g) specifies no discount rate, and the present value must be determined by this Court.

170. Under Section 17.07, FUD Neary LLC is entitled to recover all of its reasonable attorneys' fees and other Costs, and that recovery is "mandatory and not discretionary."

171. FUD Neary LLC has been damaged by Zinnia Health LLC's breaches in an amount to be proven at trial.

**WHEREFORE**, Plaintiff FUD Neary LLC requests that this Court enter judgment in its favor and against Defendant Zinnia Health LLC awarding:

a. unpaid Base Monthly Rental on the 102 Stewart Lease in an amount not less than $282,725.00, together with all further installments coming due through the date of judgment;

b. unpaid Taxes and other Monetary Obligations in an amount not less than $9,524.18;

c. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

d. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

e. in the alternative to subparagraphs (a) through (d) as to future rent, accelerated Rent under Section 13.02(g) measured by $4,451,939.68 in gross remaining rent for the 164 months remaining in the Initial Term as of August 1, 2026, discounted to present value at a rate determined by this Court;

f. possession of 102 Stewart Street, Anchorage, Alaska 99508;

g. reasonable attorneys' fees and all other Costs under Section 17.07;

h. prejudgment and postjudgment interest; and

i. such other relief as this Court deems just.

## COUNT V

**Breach of Lease—Failure to Execute and Deliver Assignment Documents in Violation of Section 15.02, an Event of Default Under Section 13.01(k)**
**(*All Plaintiffs against Zinnia Health LLC*)**

172. The Landlords reallege and incorporate paragraphs 1 through 126.

173. Section 15.02 of each Lease defines "Transfer" expansively to include "[a]ny assignment, sublease, transfer, conveyance, pledge or mortgage by Tenant, whether voluntary or involuntary, whether by operation of Law (for example, by merger) or otherwise, of any part or all of this Lease, or of any part or all of the leasehold estate created by this this Lease, or any interest herein."

174. Section 15.02 of each Lease provides that "[n]o Transfer shall occur without the prior written consent of Landlord."

175. Section 15.02 of each Lease further provides that "[a]t the time of any assignment of this Lease which is approved in writing by Landlord, the assignee shall assume all of the obligations of Tenant under this Lease pursuant to a written assumption agreement in form and substance reasonably acceptable to Landlord."

176. A Transfer occurred. The operating business conducted at each of the four Properties passed from Zinnia Health LLC to ZH Operations LLC and its subsidiaries in the acquisition of the assets of Zinnia Health. Beginning in 2025, the Luna Defendants took possession of the Properties, operated the facilities located on them, remitted rent on the 5000 Taku Lease, and directed capital work on the campus.

177. Zinnia Health LLC never sought the Landlords' prior written consent to that Transfer. The Landlords never gave written consent to that Transfer.

178. The Landlords circulated to the Tenant an Assignment and Assumption of Lease and a Consent to Assignment and Assumption of Lease for signature. On May 15, 2026, the Landlords demanded in writing: "Please sign and return the Assignment and Assumption of Lease and Consent to Assignment and Assumption of Lease that was previously circulated by Landlord."

179. Zinnia Health LLC has never signed or returned those documents. It has never delivered any written assumption agreement in any form.

180. Zinnia Health LLC's failure to obtain consent to the Transfer, and its failure to execute and deliver the assignment and assumption documents, breaches Section 15.02 of each of the four Leases.

181. That breach is an Event of Default under Section 13.01(k) of each of the four Leases, which provides that an Event of Default occurs where "a Transfer occurs without the written consent of Landlord (except to the extent that such consent is not required and Tenant otherwise complies with the provisions of Article XV of this Lease)."

182. In the alternative, and to the extent the Transfer falls within one of the five carve-outs in the final paragraph of Section 15.02, Zinnia Health LLC still breached Section 15.02. That paragraph conditions any consent-free transfer on the Tenant "remain[ing] liable for the performance of the terms of this Lease" and requires the Tenant to "give Landlord a courtesy written notice at lease [sic] thirty (30) days in advance of the assignment or sublease, along with such other customary information as Landlord may reasonably request regarding the identity of the assignee or subtenant, together with updated insurance certifications." Zinnia Health LLC gave no such notice, provided no

such information, and delivered no such insurance certifications. It has also not remained liable in fact: it has never paid.

183. Section 15.02 further provides that "[a]ny transfer, mortgage, assignment or pledge of this Lease by Tenant shall be voidable at the sole option of Landlord." The Landlords are entitled to a declaration of, and to exercise, that option.

184. The Landlords have been damaged by this breach. The Landlords have been deprived of the creditworthy, identified, contractually bound counterparty for which they bargained, deprived of the ability to enforce against the entity actually holding and using the leasehold estates, and forced to litigate against a paper tenant with no payment history and a set of operating affiliates that refuse to sign.

185. Under Section 17.07, the Landlords are entitled to recover all of their reasonable attorneys' fees and other Costs, and that recovery is "mandatory and not discretionary."

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC request that this Court enter judgment in their favor and against Defendant Zinnia Health LLC awarding:

a. a determination that a Transfer occurred under Section 15.02 of each of the four Leases without the Landlords' prior written consent;

b. a determination that an Event of Default has occurred under Section 13.01(k) of each of the four Leases;

c. specific performance under Section 13.02(l) compelling Zinnia Health LLC to execute and deliver the Assignment and Assumption of Lease and the

Consent to Assignment and Assumption of Lease as to each of the four Leases, and, upon the Landlords' written consent to the assignment so documented, to deliver to each Landlord within five days a duplicate original in recordable form as Section 15.03(d) of each Lease requires;

d. in the alternative, a declaration that the Landlords have exercised their option under Section 15.02 to treat the Transfer as void;

e. damages resulting from the breach in an amount to be proven at trial;

f. reasonable attorneys' fees and all other Costs under Section 17.07;

g. prejudgment and postjudgment interest; and

h. such other relief as this Court deems just.

## COUNT VI

**Assumption of Lease Obligations by Conduct—Implied Assignment and Assumption**

**(*All Plaintiffs against ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC*)**

186. The Landlords reallege and incorporate paragraphs 1 through 126.

187. ZH Operations LLC and Uris Hall LLC took the leasehold estates in the Properties and conducted themselves in every material respect as the tenant under the four Leases. Golden Peak Recovery Inc. and Cardinal Recovery LLC did so as to 5000 Taku Drive and the 5000 Taku Lease, and, on information and belief, as to such further Properties as discovery establishes.

188. They paid the rent, and after April 2025 they were the only ones who did. Rent on the 5000 Taku Lease was paid by Uris Hall LLC for March 2025, May 2025, June 2025, January 2026, and February 2026, and again on June 29, 2026 for March and April 2026;

by Golden Peak Recovery Inc. for July 2025, October 2025, and December 2025; and by Cardinal Recovery LLC for August 2025, September 2025, and November 2025. Bryte Health paid on that Lease for June 2024 through February 2025 and for April 2025. Each remittance was posted after the first of the month to which it was applied. After April 2025, no payment on the 5000 Taku Lease came from any source other than a Luna operating company. No payment on the 5000 Taku Lease was made by Zinnia Health LLC. Zinnia Health LLC has never remitted a dollar to any Landlord on any of the four Leases.

189. They identified the payments as rent. The accounts-payable department of Luna Health Group transmitted payment confirmations to the Landlords on Luna Health Group forms. The confirmation of June 29, 2026, sent by Annie Tran of Luna Health Group accounts payable at 1:54 p.m., itemized "Uris Hall LLC - AK Rent (March + April)." The Luna Defendants thus described their own remittances, in writing and to the Landlords, as rent owed under the Alaska Leases.

190. They operated the facilities. On information and belief, Luna Health Group operated the treatment facilities located at the four Properties, Uris Hall LLC operates at the Anchorage campus as Anchorage Recovery Center, and the Luna Defendants occupied the buildings, employed the staff, treated the patients, and enjoyed the exclusive possession that the four Leases confer.

191. Golden Peak Recovery Inc. and Cardinal Recovery LLC each performed the Tenant's payment obligation on the 5000 Taku Lease in a controlled rotation. On information and belief, each is one of the seven operating companies held beneath ZH Operations LLC, and each was formed to operate a treatment facility. Between July 2025

and December 2025 the two of them alternated month by month as the payor on the 5000 Taku Lease—Golden Peak Recovery Inc. in July 2025, Cardinal Recovery LLC in August and September 2025, Golden Peak Recovery Inc. in October 2025, Cardinal Recovery LLC in November 2025, and Golden Peak Recovery Inc. in December 2025, and no other entity paid on that Lease during those six months. Each remittance was processed and confirmed through the single centralized accounts-payable function operating under the Luna Health Group name. On information and belief, each of them took the benefit of the leasehold estate in 5000 Taku Drive during the months for which it remitted rent, and the alternation of payors reflects an allocation among affiliated operating companies, at the direction of ZH Operations LLC, of the occupancy and the operations of that Property.

192. They planned capital work on the Properties. On July 31, 2026, Steve Levin of Eagle Capital Health Ventures transmitted to the Landlords' representatives a construction budget memorandum dated July 31, 2026 for the Luna Health Group Anchorage campus, estimating approximately $7.5 million in hard construction costs across 5000 Taku Drive (Buildings A, B, and C), 102 Stewart Street, 101 Bunnell Street, and 4950 Taku Drive.

193. They negotiated over the Leases as the obligor. In June and July 2026, the Luna organization and its sponsors committed in writing that the Landlords "will be brought current in all rent and real estate taxes @ approximately $826k with the exception of Alaska phase 2," separately acknowledged as to the excepted Properties that "[w]e owe 100k on phase 2. will handle," and answered an itemized demand for March and April 2026 Alaska rent with a promise to pay, which Luna Health Group accounts payable then performed on June 29, 2026.

194. The Luna Defendants took possession of the Properties from Zinnia Health LLC in the acquisition of the operating business conducted at them; they held and used the Properties continuously thereafter; they paid the sums reserved as rent under the 5000 Taku Lease to the Landlord entitled to receive them; they described those sums to the Landlords in writing as "AK Rent"; they directed and budgeted capital improvements to all four Properties; and they negotiated with the Landlords over the rent and taxes owed under the Leases as the party obligated to pay them. By that course of conduct, extending over more than a year, the Luna Defendants took an assignment of the four Leases and assumed the obligations of the Tenant under them.

195. The Landlords accepted that performance and dealt with the Luna Defendants as the party in interest.

196. Section 15.02 of each Lease expressly contemplates this posture. Section 15.02 of the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease provides: "If, pursuant to any provision of this Section 15.02, this Lease is assigned or transferred, or if all or any part of the Property is sublet or occupied by anybody other than Tenant, Landlord may collect rent from the assignee, transferee, subtenant or occupant, and apply the net amount collected to the Rent and Additional Rent reserved in this Lease, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of any covenant or condition of this Lease or a release of Tenant from the performance or further performance by Tenant of its obligations under this Lease." Section 15.02 of the 5000 Taku Lease is identical except that it reads "the Premises" in place of "the Property." The

Landlords accordingly plead that their collection of rent from the Luna Defendants released no one and waived nothing, and that Zinnia Health LLC remains liable alongside them.

197. Having taken the benefit of the four Leases, the Luna Defendants are bound by their burdens. They are liable for all Rent, Taxes, late charges, default interest, and Costs owed under the four Leases, jointly and severally with Zinnia Health LLC.

198. ZH Operations LLC is liable on the alter-ego doctrine as well. ZH Operations LLC exercises such complete domination of the Luna Operating Defendants, and on information and belief of Zinnia Health LLC as to the Anchorage Properties, that each of those entities is a mere instrumentality of ZH Operations LLC and possesses no separate mind, will, or existence of its own concerning the four Leases. On information and belief, the Luna Operating Defendants are operating companies held beneath ZH Operations LLC. None of them owed the Landlords any obligation under any Lease. On information and belief, ZH Operations LLC directed which of them remitted the rent on the 5000 Taku Lease in any given month: Uris Hall LLC paid in March, May, and June 2025, Golden Peak Recovery Inc. in July 2025, Cardinal Recovery LLC in August and September 2025, Golden Peak Recovery Inc. again in October 2025, Cardinal Recovery LLC again in November 2025, Golden Peak Recovery Inc. again in December 2025, and Uris Hall LLC again in January and February 2026 and on June 29, 2026. None of those entities was a party to any of the Leases. The payments were processed and confirmed by a single centralized accounts-payable function operating under the Luna Health Group name. Zinnia Health LLC and ZH Operations LLC share a single business address at 520 Newport Center, Suite 550, Newport Beach, California 92660, at which Zinnia Health LLC receives

notice under each Lease. The Default Letter of May 15, 2026 was addressed jointly to both entities at that single address and identified the Tenant on each of the four Leases as "Zinnia Health LLC (ZH Operations LLC)," with a typographical variance in the recital for 4950 Taku Drive. Section 16.01 of each of the four Leases designates Adam Bhaijee as the individual to receive notice on behalf of Zinnia Health LLC and gives his electronic mail address in the zinniahealth.com domain. By May 15, 2026 that individual was reachable, and was addressed in the Default Letter, at an electronic mail address in the lunahealthgroup.com domain—the domain of ZH Operations LLC's own trade name.

199. The misconduct test is satisfied independently. ZH Operations LLC used its control of Zinnia Health LLC and of the Luna Operating Defendants to take the operating business, the buildings, the licenses, and the revenue of the Anchorage campus while leaving the lease obligations behind in an entity that has never paid a dollar and holds nothing, and while refusing for more than a year to execute the assignment and assumption documents that would place the obligation on the entity taking the benefit. That use of the corporate form worked an injustice on the Landlords, who bargained for an identified, bound counterparty and have instead been directed to a paper tenant.

200. Observance of the separate existence of these entities would sanction that result and produce an inequitable outcome. ZH Operations LLC is therefore liable for the obligations of the Tenant under each of the four Leases on the alter-ego doctrine, in addition to and independently of its assumption of those obligations by conduct.

201. The Luna Defendants have breached those assumed obligations by failing to pay Base Monthly Rental on each of the four Properties since May 2026, by failing to pay

any amount at any time on the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease, and by failing to pay the delinquent real property taxes on all four Properties.

202. The Landlords have been damaged in an amount to be proven at trial, not less than the sums itemized in Counts I through IV.

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC request that this Court enter judgment in their favor and against Defendants ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC, jointly and severally with Zinnia Health LLC, awarding:

a. a determination that ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC assumed the obligations of the Tenant under the Leases, and that ZH Operations LLC is liable for those obligations as the alter ego of Zinnia Health LLC and of the Luna Operating Defendants;

b. unpaid Base Monthly Rental on the four Leases in an amount not less than $1,454,766.00 in the aggregate, together with all further installments coming due through the date of judgment, and, as to Golden Peak Recovery Inc. and Cardinal Recovery LLC, unpaid Base Monthly Rental on the 5000 Taku Lease in an amount not less than $337,016.00, except to the extent discovery establishes a broader benefit;

c. unpaid Taxes and other Monetary Obligations in an amount not less than $72,445.02 in the aggregate, and, as to Golden Peak Recovery Inc. and

Cardinal Recovery LLC, not less than $43,997.13 on 5000 Taku Drive, except to the extent discovery establishes a broader benefit;

d. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

e. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

f. in the alternative as to future rent, accelerated Rent under Section 13.02(g) measured by $33,421,977.12 in aggregate gross remaining rent as of August 1, 2026, discounted to present value at a rate determined by this Court, and, as to Golden Peak Recovery Inc. and Cardinal Recovery LLC, measured by $15,821,285.32 in gross remaining rent on the 5000 Taku Lease, except to the extent discovery establishes a broader benefit;

g. possession of each of the four Properties, and, as to Golden Peak Recovery Inc. and Cardinal Recovery LLC, possession of 5000 Taku Drive, except to the extent discovery establishes a broader benefit;

h. reasonable attorneys' fees and all other Costs under Section 17.07;

i. prejudgment and postjudgment interest; and

j. such other relief as this Court deems just.

**<u>COUNT VII</u>**
**Unjust Enrichment**
**(*All Plaintiffs against ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC, Pleaded in the Alternative*)**

203. The Landlords reallege and incorporate paragraphs 1 through 126.

204. This Count is pleaded in the alternative to Count VI, and applies to the extent this Court determines that the Luna Defendants are not bound by the four Leases as assignees.

205. The Landlords conferred a benefit on the Luna Defendants. The Landlords delivered and made available four improved commercial healthcare properties in Anchorage, and the Luna Defendants took and held exclusive possession, occupancy, and use of them.

206. The Luna Defendants knew of and appreciated that benefit. On information and belief, they operated licensed treatment facilities in the buildings and held the campus out to the public as Anchorage Recovery Center; a construction budget memorandum estimating approximately $7.5 million in hard construction costs across the four Properties was prepared for the Luna Health Group Anchorage campus and transmitted to the Landlords' representatives on July 31, 2026; and they made partial payments that they themselves labeled "AK Rent."

207. The benefit conferred on Golden Peak Recovery Inc. and on Cardinal Recovery LLC is the use and occupancy of 5000 Taku Drive during the months for which each of them remitted rent on the 5000 Taku Lease. On information and belief, each of them held and used that Property in those months in the conduct of a licensed treatment business, and

each of them accepted the exclusive possession that the 5000 Taku Lease confers without becoming liable on the instrument that confers it. Neither has paid anything for the use and occupancy of 5000 Taku Drive after December 2025, and neither has paid anything at any time for the use or occupancy of 4950 Taku Drive, 101 Bunnell Street, or 102 Stewart Street.

208. The Luna Defendants have accepted and retained that benefit without paying its reasonable value. They have paid nothing at all for the use and occupancy of 4950 Taku Drive, 101 Bunnell Street, and 102 Stewart Street from June 2025 forward. They have paid nothing for the use and occupancy of 5000 Taku Drive since June 29, 2026, and nothing for the May 2026 occupancy of that Property. They have paid none of the delinquent real property taxes assessed against any of the four Properties, which the occupant of Alaska commercial property would ordinarily be expected to bear under the net structure of these tenancies.

209. Retention of that benefit without payment is inequitable. The Luna Defendants have taken the entire commercial value of four buildings on an operating healthcare campus while directing the Landlords to a tenant of record that has never paid and refusing to sign the documents that would place their own names on the obligation.

210. The Landlords are entitled to restitution measured by the reasonable value of the Luna Defendants' use and occupancy of the four Properties, together with the value of the unpaid real property taxes and other carrying costs the Landlords have borne.

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC request that this Court enter judgment in their favor and against

Defendants ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC awarding:

a. restitution in the amount of the reasonable value of the Luna Defendants' use and occupancy of 5000 Taku Drive, 4950 Taku Drive, 101 Bunnell Street, and 102 Stewart Street, in an amount to be proven at trial;

b. restitution in the amount of the delinquent real property taxes assessed against the four Properties, not less than $72,445.02 in the aggregate, together with all further amounts accruing;

c. disgorgement of the value retained by the Luna Defendants from their occupancy and operation of the four Properties;

d. possession of each of the four Properties;

e. costs of suit;

f. prejudgment and postjudgment interest; and

g. such other relief as this Court deems just.

**COUNT VIII**
**Successor Liability—Mere Continuation**
**(*All Plaintiffs against ZH Operations LLC*)**

211. The Landlords reallege and incorporate paragraphs 1 through 126.

212. On information and belief, ZH Operations LLC acquired the assets of Zinnia Health LLC, including the operating business conducted at the four Anchorage Properties.

213. The acquisition of the assets of Zinnia Health was recognized and described by the Landlords' counsel in the May 15, 2026 Default Letter, which put the Tenant on notice of its failure "to properly document the assignment of the Lease subsequent to the

acquisition of the assets of Zinnia Health." That letter does not identify the acquirer, and the Landlords therefore plead the acquirer's identity on information and belief.

214. The management, the notice function, and the personnel of the Tenant passed to ZH Operations LLC along with the operating business. Section 16.01 of each of the four Leases designates Adam Bhaijee as the person to whom notice to Zinnia Health LLC is addressed and gives his electronic mail address as adam.bhaijee@zinniahealth.com. The Default Letter of May 15, 2026 addressed the same individual, in the same capacity, at an electronic mail address in the lunahealthgroup.com domain—the domain of ZH Operations LLC's own trade name. On information and belief, the change reflects the passage of the Tenant's personnel and administrative functions to ZH Operations LLC in the acquisition. The five individuals identified in the Default Letter as the persons to whom notice to the Tenant is directed are the same individuals through whom the Luna organization conducted the June, July, and August 2026 discussions of the Anchorage rent and taxes. No individual acting for Zinnia Health LLC alone has communicated with the Landlords at any time relevant to this action.

215. By mid-2025, ZH Operations LLC and its operating companies had displaced Zinnia Health LLC entirely as to the four Anchorage Properties. From that point forward, every payment of rent on the 5000 Taku Lease came from a ZH Operations LLC subsidiary: Uris Hall LLC, Golden Peak Recovery Inc., or Cardinal Recovery LLC. Every communication about the Properties from that point forward came from Luna Health Group personnel.

216. ZH Operations LLC is a mere continuation of the Zinnia Health enterprise as to these four Properties. It carries on the same business, at the same locations, serving the same patient population, using the same buildings, under the same four Leases, with the same personnel receiving notice at the same Newport Beach, California address at which the Tenant receives notice under the Leases. The Default Letter of May 15, 2026 was addressed jointly to "Zinnia Health LLC" and "ZH Operations LLC" at that single shared address, and identified the Tenant on each of the four Leases as "Zinnia Health LLC (ZH Operations LLC)," with a typographical variance in the recital for 4950 Taku Drive.

217. On information and belief, Zinnia Health LLC and ZH Operations LLC share a common identity of ownership, management, or control, and the persons who held the equity or directed the affairs of Zinnia Health LLC before the acquisition hold equity in, or direct the affairs of, ZH Operations LLC or one or more of its equity holders. The ownership of Zinnia Health LLC has not been publicly disclosed, no instrument of acquisition has been produced to the Landlords, and the facts bearing on continuity of ownership are within the knowledge of the Defendants. No Defendant disputed the Default Letter's statement that the Lease obligations were required to be assigned "subsequent to the acquisition of the assets of Zinnia Health," and no Defendant has at any time identified the acquirer, the date of the acquisition, or the consideration paid.

218. Zinnia Health LLC, having on information and belief transferred its operating assets and having never paid anything on any of the four Leases, is a shell as to these obligations. On information and belief, Zinnia Health LLC did not remain in business as the operator of the Anchorage campus after the acquisition.

219. No guaranty exists on any of the four Leases. If ZH Operations LLC is permitted to take the operating business, the buildings, the licenses, and the revenue while leaving the lease obligations behind in the transferor, the Landlords are left with no solvent obligor at all.

220. **Alter ego—mere instrumentality.** In addition, and as an independent basis for holding ZH Operations LLC liable on the obligations of Zinnia Health LLC, ZH Operations LLC exercises such complete domination of the finances, policy, and business practice of Zinnia Health LLC concerning the four Anchorage Properties that Zinnia Health LLC has no separate mind, will, or existence of its own as to those obligations. The two entities share a single business address. The Tenant's own default correspondence was directed to both at that address and identified the Tenant as "Zinnia Health LLC (ZH Operations LLC)." The operating assets, the licenses, the personnel, the revenue, and the decision whether and when to pay rent all reside with ZH Operations LLC. Zinnia Health LLC has never exercised any of them, and has never made a payment.

221. **Alter ego—misconduct.** In the alternative, ZH Operations LLC used its control of Zinnia Health LLC to commit a wrong against the Landlords: it took the entire benefit of four long-term net leases while leaving the burden with an entity that has never performed, refused for more than a year to execute the assignment and assumption documents that would have placed the burden where the benefit went, and then proposed that the accrued arrears simply "be forgiven." That control was the proximate cause of the Landlords' unpaid claims.

222. Adherence to the separate existence of Zinnia Health LLC and ZH Operations LLC under these circumstances would sanction a fraud on the Landlords or promote an injustice, in that it would leave the Landlords with a judgment against an entity that holds nothing while the entity holding everything continues to occupy and operate their buildings.

223. ZH Operations LLC is therefore liable as successor to Zinnia Health LLC, and independently as its alter ego, for all obligations of the Tenant under each of the four Leases, including all unpaid Rent, Taxes, late charges, default interest, accelerated Rent, and Costs.

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC request that this Court enter judgment in their favor and against Defendant ZH Operations LLC awarding:

a. a determination that ZH Operations LLC is liable as successor to Zinnia Health LLC, and independently as the alter ego of Zinnia Health LLC, for all obligations of the Tenant under each of the four Leases;

b. unpaid Base Monthly Rental on the four Leases in an amount not less than $1,454,766.00 in the aggregate, together with all further installments coming due through the date of judgment;

c. unpaid Taxes and other Monetary Obligations in an amount not less than $72,445.02 in the aggregate;

d. late charges of five percent of each delinquent Base Monthly Rental installment under Section 5.06;

e. default interest at the Default Rate of eighteen percent per annum or the highest rate permitted by law, whichever is less, on all delinquent amounts from their respective due dates under Section 5.06;

f. in the alternative as to future rent, accelerated Rent under Section 13.02(g) measured by $33,421,977.12 in aggregate gross remaining rent as of August 1, 2026, discounted to present value at a rate determined by this Court;

g. reasonable attorneys' fees and all other Costs under Section 17.07;

h. prejudgment and postjudgment interest; and

i. such other relief as this Court deems just.

## COUNT IX
## Voidable Transfer—AS 34.40.010
## (*All Plaintiffs against ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC, Pleaded in the Alternative*)

224. The Landlords reallege and incorporate paragraphs 1 through 126.

225. This Count is pleaded in the alternative to Counts VI, VII, and VIII, and applies to the extent this Court determines that the Luna Defendants are not otherwise liable for the obligations of the Tenant under the four Leases.

226. AS 34.40.010 provides that "a conveyance or assignment, in writing or otherwise, of an estate or interest in land, or in goods, or things in action, or of rents or profits issuing from them or a charge upon land, goods, or things in action, or upon the rents or profits from them, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, or a bond or other evidence of debt given, action commenced, decree or judgment suffered, with the

like intent, as against the persons so hindered, delayed, or defrauded is void." The statute reaches, by its terms, a conveyance of an estate or interest in land and a conveyance of the rents or profits issuing from land. The conveyances pleaded in this Count are of both.

227. Each Landlord is a creditor of Zinnia Health LLC. Each Landlord holds a claim against Zinnia Health LLC for unpaid Base Monthly Rental, unpaid Taxes, late charges, default interest, and Costs under its Lease. Those claims arose on the first day of each month for which rent went unpaid, beginning no later than June 1, 2025 on the 4950 Taku Lease, the 101 Bunnell Lease, and the 102 Stewart Lease, and continuing on the first day of every month thereafter on all four Leases.

228. Zinnia Health LLC conveyed to the Luna Defendants estates and interests in land: the leasehold estates created by the four Leases in 5000 Taku Drive, 4950 Taku Drive, 101 Bunnell Street, and 102 Stewart Street, Anchorage, Alaska, together with the possession, occupancy, and use of those Properties. Zinnia Health LLC also conveyed the rents and profits issuing from those Properties—the revenues generated by the treatment operations conducted in the four buildings—and the operating business conducted on them, including the going-concern value of the licensed treatment operations housed there.

229. The conveyances were effected by the acquisition of the assets and the operating business of Zinnia Health LLC by ZH Operations LLC in 2025, and by the delivery of possession and control of the four Properties and of the operations conducted at them to ZH Operations LLC and its operating companies in that acquisition. From that delivery forward the Luna Defendants held, used, and operated the Properties and collected the revenues generated at them, and Zinnia Health LLC held none of it. No instrument of

conveyance was delivered to the Landlords, no written consent to a Transfer was sought, and no assignment was recorded. On information and belief, the acquisition was documented by one or more written agreements, and the identity of those agreements, the closing date, the parties, and the consideration are within the knowledge of the Defendants and are not presently known to the Landlords.

230. The transferor, the transferees, the dates, and the amounts of those conveyances are as follows. The transferor in each instance is Zinnia Health LLC.

| Transferee | Date or period of transfer | Interest transferred | Amount / value |
|---|---|---|---|
| ZH Operations LLC | 2025, in connection with the acquisition of the assets and operating business of Zinnia Health LLC, and in effect no later than mid-2025 | The operating business conducted at all four Properties, the leasehold estates created by the four Leases, and the rents and profits issuing from the four Properties | The going-concern value of the Anchorage operating business and the value of four leasehold estates carrying $33,421,977.12 in gross contract rent scheduled to become due as of August 1, 2026 |
| Uris Hall LLC | From no later than March 2025 and continuing, evidenced by its remittances of March 2025, May 2025, June 2025, January 2026, February 2026, and June 29, 2026 | The possession, occupancy, and use of 5000 Taku Drive as Anchorage Recovery Center, and the rents and profits issuing from that Property | The reasonable rental value of the possession, occupancy, and use so received, and the revenues generated at that Property, in an amount to be proven at trial |
| Golden Peak Recovery Inc. | On information and belief, the months of July 2025, October 2025, and December 2025, evidenced by | On information and belief, the possession, occupancy, and use of 5000 Taku Drive | The reasonable rental value of the possession, occupancy, and use so received, and the revenues generated at that Property, |

| Transferee | Date or period of transfer | Interest transferred | Amount / value |
|---|---|---|---|
| | its remittances for those months | for each month identified, and the rents and profits issuing from that Property | in an amount to be proven at trial |
| Cardinal Recovery LLC | On information and belief, the months of August 2025, September 2025, and November 2025, evidenced by its remittances for those months | On information and belief, the possession, occupancy, and use of 5000 Taku Drive for each month identified, and the rents and profits issuing from that Property | The reasonable rental value of the possession, occupancy, and use so received, and the revenues generated at that Property, in an amount to be proven at trial |

231. The aggregate of all sums received by 5000 Taku Investors LLC on the 5000 Taku Lease from inception through July 30, 2026 is $1,618,400.00, and the exact amount and date of each individual remittance appears in the Landlords' general ledger and in the payment confirmations transmitted by the accounts-payable department of Luna Health Group. The precise consideration, if any, that each transferee gave to Zinnia Health LLC for the interests it received is within the knowledge of the Defendants and is not presently known to the Landlords.

232. On information and belief, Zinnia Health LLC received no reasonably equivalent value in exchange for those conveyances. It parted with the leasehold estates, the possession, the operating business, and the revenue of the Anchorage campus, and it retained the entire liability under the four Leases. It has made no payment of any kind on any of the four Leases at any time.

233. The conveyances were made with intent to hinder, delay, or defraud the Landlords in the collection of their claims. The following circumstances, taken together, establish that intent:

a. the conveyances were made to insiders—ZH Operations LLC, which acquired Zinnia Health LLC's assets, and three operating companies held beneath ZH Operations LLC;

b. Zinnia Health LLC retained the leasehold liabilities while parting with the leasehold benefits, and it has never paid anything on those retained liabilities;

c. the terms of the conveyances were withheld from the Landlords in exactly the manner Section 15.02 of each Lease was written to prevent—no written consent was sought, no thirty days' advance notice was given, no assignee information was provided, and no updated insurance certifications were delivered—so that although the Landlords could see that money was arriving from entities other than the Tenant, they were never told what had been conveyed, to whom, on what date, or for what consideration, and they have never been told since;

d. the assignment and assumption documents that would have placed the obligation on the transferees were circulated by the Landlords, demanded in writing on May 15, 2026, and never signed or returned;

e. on information and belief, after the conveyances Zinnia Health LLC retained no assets from which the Landlords' claims could be satisfied and is a shell as to these obligations; the financial records of Zinnia Health LLC are within

the knowledge of the Defendants, and the Landlords plead its insolvency on information and belief pending the discovery of those records;

f. the conveyances occurred at a time when substantial rent obligations had been incurred and were coming due, and the arrears on the four Properties reached $1,298,032.23 by May 13, 2026 and have grown since;

g. the transferees continued to occupy and operate the Properties and to collect the revenues generated at them after the Landlords declared default, and paid nothing on any Property after June 29, 2026; and

h. on August 3, 2026, after the Landlords had demanded payment, the Luna side proposed that the accrued arrears simply "be forgiven," and on August 5, 2026 the Luna side ceased communicating with the Landlords entirely.

234. The Landlords are entitled to have the conveyances set aside as against them to the extent necessary to satisfy their claims, and to reach the interests conveyed in the hands of each transferee.

235. Each transferee is liable to the Landlords to the extent of the value of the estate or interest in land that it received.

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC request that this Court enter judgment in their favor and against Defendants ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC awarding:

a. a judgment declaring void, as against the Landlords, each conveyance identified in paragraph 230 of this Complaint, to the extent necessary to satisfy the Landlords' claims;

b. an order permitting the Landlords to levy execution on the leasehold estates and other interests conveyed, in the hands of each transferee;

c. a money judgment against each transferee to the extent of the value of the estate or interest it received;

d. an injunction restraining further transfer or encumbrance of the interests conveyed;

e. an accounting of all consideration given and received for each conveyance;

f. costs of suit and reasonable attorneys' fees to the extent permitted by law and by Section 17.07;

g. prejudgment and postjudgment interest; and

h. such other relief as this Court deems just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC respectfully request that this Court enter judgment in their favor and against Defendants Zinnia Health LLC, ZH Operations LLC d/b/a Luna Health Group, Uris Hall LLC d/b/a Anchorage Recovery Center, Golden Peak Recovery Inc., and Cardinal Recovery LLC, jointly and severally to the extent alleged above, and award the following relief:

**A. Unpaid Base Monthly Rental.** All unpaid Base Monthly Rental under each of the four Leases, in amounts not less than $337,016.00 on the 5000 Taku Lease, $111,775.00 on the 4950 Taku Lease, $723,250.00 on the 101 Bunnell Lease, and $282,725.00 on the 102 Stewart Lease—an aggregate of not less than $1,454,766.00—together with every further installment coming due through the date of judgment. Of the $1,298,032.23 itemized in the Default Letter as of May 13, 2026, $1,133,232.23 remains unpaid after crediting the June 29, 2026 payment of $164,800.00 in full; that sum is a component of the $1,454,766.00 aggregate stated above and is not sought in addition to it. No installment awarded under this paragraph may also be awarded as part of any accelerated sum, and no sum awarded under this paragraph may also be awarded under paragraphs B, C, or D below. The Landlords seek each installment and each charge once.

**B. Unpaid Impositions and Taxes.** All unpaid Taxes and other Monetary Obligations under Section 7.01(a) and Section 5.03 of each Lease, in amounts not less than $43,997.13 on 5000 Taku Drive, $2,106.20 on 4950 Taku Drive, $16,817.51 on 101 Bunnell Street, and $9,524.18 on 102 Stewart Street—an aggregate of not less than $72,445.02—together with all further impositions accruing.

**C. Late Charges.** Late charges under Section 5.06 of each Lease equal to five percent of every installment of Base Monthly Rental received more than five days after its due date, and of every such installment that remains unpaid.

**D. Default Interest.** Interest at the Default Rate under Section 5.06 and Article I of each Lease—eighteen percent per annum or the highest rate permitted by law, whichever is less—on all delinquent Rental and all delinquent Monetary Obligations, computed from

and including each original due date through the date of payment, subject to the limitation in Section 5.06 that the sum of late charge and interest not exceed the maximum legal rate then in effect.

**E. Accelerated Rent.** In the alternative as to future rent, accelerated Rent under Section 13.02(g) of each Lease for the entire original scheduled Lease Term, measured as of August 1, 2026 by gross remaining rent of $15,821,285.32 on the 5000 Taku Lease (155 months remaining), $1,760,069.24 on the 4950 Taku Lease (164 months remaining), $11,388,682.88 on the 101 Bunnell Lease (164 months remaining), and $4,451,939.68 on the 102 Stewart Lease (164 months remaining), an aggregate of $33,421,977.12, discounted to present value. No discount rate is specified in Section 13.02(g) or anywhere else in any of the four Leases, and the Landlords request that this Court determine the appropriate rate and the resulting present value.

**F. Avoidance of Transfers.** In the alternative, the relief requested in Count IX, including avoidance of the conveyances identified in paragraph 230 as against the Landlords and a money judgment against each transferee to the extent of the value it received.

**G. Receiver.** Appointment of a receiver over the four Properties and over the operations conducted at them, on the motion the Landlords will file under Fed. R. Civ. P. 66, with the powers this Court finds appropriate to preserve the Properties and the revenues generated at them pending judgment, and on the consent and waiver contained in Section 13.02(k) of each Lease, to which the Tenant irrevocably consented and any objection to which the Tenant waived.

**H. Attorneys' Fees and Costs.** All reasonable attorneys' fees and other Costs under Section 17.07 of each Lease, which provides that such an award "shall be mandatory and not discretionary," with "Costs" as defined in Article I of each Lease.

**I. Interest.** Prejudgment interest and postjudgment interest at the maximum rate permitted by law.

**J. Further Relief.** Such other and further relief, at law or in equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

253. Section 17.10 of each of the four Leases contains a mutual predispute waiver of the right to trial by jury, providing that "LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER OR ITS SUCCESSORS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PROPERTY, AND/OR ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY REMEDY."

254. The Landlords allege that the predispute jury waiver in Section 17.10 is unenforceable and does not operate to deprive the Landlords of their right to trial by jury on the claims pleaded in this Complaint. The Landlords further allege that Section 17.10

does not reach the claims pleaded against ZH Operations LLC, Uris Hall LLC, Golden Peak Recovery Inc., and Cardinal Recovery LLC, none of which is a signatory to any of the four Leases, and does not reach the claims pleaded in Counts VII and IX, which do not arise under the Leases. The Landlords expressly preserve the question of the enforceability and scope of Section 17.10 for determination by this Court.

255. Under Fed. R. Civ. P. 38(b), Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC demand a trial by jury on all issues so triable.

Dated: September 9, 2026

Respectfully submitted,

**LOFTUS & EISENBERG, LTD.**

By: /s/ *Alexander N. Loftus*

Alexander N. Loftus
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
(312) 899-6625
alex@loftusandeisenberg.com
*Counsel for Plaintiffs 5000 Taku Investors LLC, Bunnell Taku Investors LLC, and FUD Neary LLC*

## EXHIBITS

- **Exhibit A**—Lease Agreement dated June 6, 2024 between 5000 Taku Investors LLC and Zinnia Health LLC (5000 Taku Drive, Anchorage, Alaska 99508)
- **Exhibit B**—Lease Agreement dated December 1, 2024 between Bunnell Taku Investors LLC and Zinnia Health LLC (4950 Taku Drive, Anchorage, Alaska 99508)
- **Exhibit C**—Lease Agreement dated December 1, 2024 between Bunnell Taku Investors LLC and Zinnia Health LLC (101 Bunnell Street, Anchorage, Alaska 99508)
- **Exhibit D**—Lease Agreement dated April 1, 2025 between FUD Neary LLC and Zinnia Health LLC (102 Stewart Street, Anchorage, Alaska 99508)
- **Exhibit E**—Notice of Default dated May 15, 2026 from Timm & Garfinkel, LLC to Zinnia Health LLC and ZH Operations LLC, together with its Exhibit A (Delinquent Base Monthly Rental Amounts)
- Exhibit F—Notice of Default dated September 10, 2025 from Timm & Garfinkel, LLC to Zinnia Health LLC, together with its Exhibit A (Delinquent Base Monthly Rental Amounts)

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and that I caused a copy of the foregoing, together with the summons issued in this action, to be served on each Defendant in the manner prescribed by Fed. R. Civ. P. 4.

/s/ Alexander N. Loftus

Alexander N. Loftus